MONTANA STATE HIGHWAY COMMISSION, Plaintiff and Appellant, v. MABEL JACOBS, MARJORIE J. NOEL, RANDOLPH JACOBS and THEODORE JACOBS, Defendants and Respondents.

No. 11286.
Submitted September 14, 1967. Decided December 14, 1967.
435 P.2d 274.

Daniel J. Sullivan (argued), Helena, for appellant.

Boone & Karlberg, Dalton T. Pierson, William T. Boone (argued), Missoula, for respondents.

MR. JUSTICE JOHN C. HARRISON delivered the Opinion of the Court.

This is an appeal by the State from a judgment entered in

an eminent domain action brought by the Montana Highway Commission in which the jury awarded compensation in the amount of $90,000. The case was tried in the district court at Missoula, the Honorable Jack L. Green, judge presiding.

The property in question is a unit of some 850 acres located approximately 3 miles east of Missoula. The southern boundary of the property is at the base of Mount Sentinel. From this southern boundary the line extends in a semi-circle or ox bow north, east and south along the main channel of the Clark Fork River. The tract is sometimes called the Bandman Ranch or Bandman Flats.

Interstate Highway 90 now bisects the property east and west for a distance of 5,500 feet. Topographically, the property is a series of benches and terraces. The highway traverses the property through the highest terrace in a cut section with a width of 280 feet, then goes into a section at grade with a width of 240 feet. As a consequence of the construction of the highway there is a triangular area created south of the interstate which is cut off from the main part of the property.

There is access to this portion of the property by means of a county road which traverses the property—it crossing the interstate by means of an underpass. A small part of the land taken results from the widening of the county road at the approaches to the underpass. The total taking for the highway is 32.31 acres and the widening of the county road takes 1.04 acres for a total take of 33.35 acres.

There is no access to this property from the interstate. From the interstate the first access point west of the property is at the East Missoula interchange and the first point of access east of the property is at the Milltown interchange. Access to the property is from U. S. Highway 10 located across the river. The county road takes off from U. S. 10 and crosses the river on a bridge that has a 3-ton load limit. After crossing the bridge the county road traverses the property, goes under Interstate 90, crosses a railroad right of way at the southern part

of the property and then goes through an area called Deer Creek.

The compensation due to the defendants is the value of what was taken from them plus any depreciation in value of the property not actually taken but injuriously affected. This value is determined by the actual value of the land at the date on the service of the summons, in this case, May 7, 1965. R.C.M.1947, § 93-9913. The "actual value" is the price that would in all probability result from fair negotiation, where the seller is willing to sell and buyer desires to buy—the market value. State Highway Comm. v. Milanovich, 142 Mont. 410, 384 P.2d 752; State Highway Comm. v. Peterson, 134 Mont. 52, 328 P.2d 617; State v. Lee, 103 Mont. 482, 63 P.2d 135. In this case just compensation is the market value of what was taken plus the dollar amount the remainder depreciated in value on the market because of the construction of the highway.

Compensation is based on the highest and best use to which the land is adaptable, whether so used at the time of the summons or not. State Highway Comm. v. Hoblitt, 87 Mont. 403, 288 P. 181. At the date of the service of summons the land in this case was used for agricultural purposes. However, all of the witnesses for both parties agreed that the highest and best use of the land at the pertinent date was for residential subdivision development. Thus, the compensation due to defendants is properly determined by considering the market value of the land in relation to prices paid in the Missoula area for land to be developed into residential subdivisions.

As is often the case when a condemnation suit is litigated, the values placed on the land were far apart. The witnesses for the state testified that just compensation would be between $13,340 and $18,675. The defendants' witnesses assessed compensation between $111,975 and $129,000. The jury, as is seen by the award of $90,000, attached greater weight to the testimony of the value witnesses for the defense than to that of

those for the State. The State asserts in this appeal that the findings of the jury cannot be upheld as the amount awarded was far in excess of just compensation.

It is the defendants' value evidence that is first attacked. The State claims defendants' expert witnesses based their opinions on mere speculation. The word speculation may be used in two ways. In one sense, it is used to describe undeveloped property that may have a certain value due to mineral, timber, housing or other potential. A market value for such property may be shown. This value is speculative, but it is able to be objectively appraised. In the other sense "speculation" is a synonym for conjecture or guess. It is value evidence based on this second type of speculation that cannot contain a jury verdict. State Highway Comm. v. Antonioli, 145 Mont. 411, 401 P.2d 563. Ascertaining the value of residential subdivision land requires some "speculation." However, such "speculation" may be of the first sort set out above and if a proper foundation is laid an expert witness may give his opinion of the value of such land.

The first value witness for defendants was a Mr. Weidenfeller. He is a real estate man in the Missoula area and has been for more than 20 years. He specialized in the development of residential property. In his testimony he stated that he was familiar with the property here in question and also the market for such property in the area. Having shown that he knew more than the ordinary person on the street about the subject in question and that he testified to facts within his own knowledge and observation he was qualified to give his opinion as an expert. State Highway Comm. v. Peterson, supra; Yellowstone Park Ry. Co., v. Bridger Coal Co., 34 Mont. 545, 87 P. 963. His testimony was that just compensation to defendants would be $129,000. Of this $66,000 would be for what was taken and $63,000 depreciation to the remainder of the property.

Mr. Weidenfeller stated that his valuation was

based upon three recent land transactions in the Missoula area in which he was involved. The prices paid and received in these transactions were not offered as substantive evidence of what the subject property was worth. When a price paid for another piece of property is offered as evidence of the value of property sought to be condemned a strong similarity between the two parcels must be shown to exist. State Highway Comm. v. Tubbs, 147 Mont. 296, 411 P.2d 739. However, when the value of another piece of property is testified to, as was the case here, for the purpose of showing the basis for an expert's knowledge of the market and his opinion of value, the requirement of similarity is not so strict and the question of the admissibility of the testimony is largely in the discretion of the trial judge. 5 Nichols on Eminent Domain, § 18.42(1), p. 253; 27 Am.Jur.2d, Eminent Domain, § 429, pp. 431-35; 29A C.J.S. Eminent Domain § 273(10), p. 1209. Here the pieces of land used by the witness as a basis for his opinion were raw lands, without utilities in place, were within the same economic area as defendants' land, the sales were sufficiently close in point of time to afford a fair comparison and were made in a free and open market for cash. The trial court did not abuse its discretion in admitting testimony as to them.

On very thorough direct and cross examinations the entire basis for the witness's valuation was brought out. He stated that he assigned different values to different portions of the land and that the new highway went through some of the most valuable land. He outlined how he determined the remaining land was depreciated, what portions of it were depreciated and how much. He stated on cross-examination that he did not deduct from his valuation because of the lack of close schools and utilities and because of the access problem. He thought these things would be supplied or remedied as the need arose. These statements go to the weight that his opinion carried with the jury. They may tend to weaken his testimony but as a qualified expert witness he could make them.

Defendant's second value witness, a Mr. Tomlinson, gave an opinion that just compensation would be $127,000, $66,000 for what was taken and $61,000 depreciation to the remainder. Mr. Tomlinson has been a building contractor for over 20 years and since 1957 has been in the real estate business in Missoula as a partner with Mr. Weidenfeller. His appraisal was similar to that of Mr. Weidenfeller. He qualified as an expert and as such could give an opinion. As the basis of his opinion and to show his knowledge of the market he testified to the same sales of property in the area as did his partner. We have already approved of testimony concerning these sales for this purpose. Any weaknesses in his testimony were brought out for the jury by the able cross examination by counsel for the State.

The testimony of defendants' third value witness was introduced by deposition. The witness, Mr. Saunderson, was out of the country at the time of trial so by agreement his testimony was read to the jury. Mr. Saunderson has a background of land appraisal work for many agencies of the national, state and local governments as well as having appraised lands for several private corporations. Most of his work has been in appraising agricultural lands but he is not without experience in valuing urban real estate. He stated that he made an investigation of the market for residential development land in the Missoula area. He mentioned that he had looked into many recent sales on the open market in the area, some large and some small. He found the sales in which the two previous witnesses for the defendants were involved to be the most helpful in enabling him to form an opinion. After studying the property in question his estimate of just compensation was $111,975. Again, the entire basis for his valuation was placed before the jury.

The expert testimony concerning value presented by the defendants was not based on that type of "speculation" that amounts to mere guessing or conjecture. It was adequate

in law. Therefore, there was evidence before the jury that would sustain their verdict.

The State also assigns as error the overruling of its objection to the use of defendants' exhibit 12 for demonstrative purposes. This exhibit consists of two drawings or plats of the subject property, which show the property divided into lots, streets, parks, school areas, church areas and commercial sites. These plats have never been recorded. One of these plats showed the tract with the interstate highway running through it and the other was drawn without the interstate. Both drawings were made after the highway was in existence.

The testimony relative to these plats was given by a Mr. Marsden. On direct examination he had given an opinion that the property would suffer a loss in value because the interstate bisects it. Mr. Marsden is engaged in the work of city planning for a firm in the State of Washington. He showed that he had knowledge of how residential subdivisions were planned and that he was familiar with the defendants' property. He was qualified to give his opinion that the highway crossing the property would be of a disadvantage to its use as a subdivision. The plats were shown to illustrate the basis of the testimony by way of demonstrating what path the new highway followed through the property and the shape of the two pieces into which it had been divided. They also demonstrated that the property was truly adaptable for a residential subdivision.

The State claims that showing these plats to the jury was reversible error because they caused them to speculate and to value the land as lots and roads that did not exist at the time of the service of summons. The jury was well aware that these plats did not represent the tract as it existed at the date of summons or at the time of trial. While Mr. Marsden was on the stand he stated on both direct and cross-examination that these plats did not show improvements that were actually in existence. Several large aerial photographs were in evidence show-

ing clearly that the tract was raw land. Throughout the entire trial it was made entirely clear that there were no improvements on the land and it was not to be valued as if there were. In its instructions to the jury, the court made it clear that the jury was not to speculate or guess what the land would be worth in the future but to value it as it was.

It is common practice to allow a witness to use such aids as these plats to illustrate his testimony to the jury. Whether the use of these aids is proper rests largely in the sound discretion of the trial judge. Unless there is a manifest abuse of this discretion we will not overturn the lower court's discretion in the matter. 98 C.J.S. Witnesses § 327, p. 28.

In eminent domain proceedings, this court has long made it a policy not to interfere with the findings of the jury unless the award given is so obviously and palpably out of proportion to the value of what was taken as to be in excess of just compensation provided for by section 14, Article III, of the Montana Constitution. Alexander v. State Highway Comm., 147 Mont. 367, 412 P.2d 414; State Highway Comm. v. Peterson, supra; Interstate Power Co. v. Anaconda Copper Mining Co., 52 Mont. 509, 159 P. 408. In this case there was sufficient evidence properly before the jury to sustain a verdict higher than that given. Thus, we cannot say that the amount awarded was obviously and palpably out of proportion to just compensation.

Having reviewed the record carefully and examined closely the specifications of error assigned by the State we find that there was no substantial error in the proceedings in the lower court and the judgment entered therein is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES HASWELL, ADAIR and CASTLES concur.