No. 13022

IN THE SUPREME COURT OF THE STATE OF MONTANA

1975

---

THE MONTANA POWER COMPANY, a
Montana Corporation,

Plaintiff and Appellant,

-vs-

SAMUEL WOLFE, LYNN WOLFE et al.,

Defendants and Respondents.

---

Appeal from:   District Court of the Fourth Judicial District,
               Honorable Edward T. Dussault, Judge presiding.

Counsel of Record:

For Appellant:

Garlington, Lohn and Robinson, Missoula, Montana
James C. Garlington argued, Missoula, Montana

For Respondents:

McGarvey and Moore, Kalispell, Montana
Dale McGarvey argued, Kalispell, Montana
Goldman, McChesney and Eck, Missoula, Montana
Lawrence Eck argued, Missoula, Montana

---

Submitted:   December 9, 1975

Decided: FEB -4 1976

Filed: FEB -4 1976

Thomas J. Kearney
Clerk

Mr. Justice Wesley Castles delivered the Opinion of the Court.

In this eminent domain proceeding plaintiff Montana Power Company appeals the judgment entered on a jury's award of compensation for a strip of defendant's land condemned as an easement for plaintiff's 161-KV power transmission line. We affirm the judgment.

The easement condemned is a strip of land 80 feet wide, stretching 11,167 feet along the upper bench portion of defendant's 5200 acre ranch located on the east side of the Bitterroot valley, east of Stevensville in Ravalli County. This strip contains an area of 20.5 acres. The remainder of defendant's property subject to depreciation in value resulting from this taking constitutes 319.5 acres. Eleven pole structures of the plaintiff utility's transmission line between its Missoula No. 4 substation and Hamilton Heights occupy the easement. The pole structures are approximately 58 feet tall. There are 9 double pole structures with 2 triple pole structures in this easement. The structures are visible for a distance of about 5 miles, and placed on knolls or promontories in defendant's timbered pasture and on a small portion of his cultivated land.

Defendant's ranch as a whole contained a small amount of irrigated hay and pasture land, some dry land crop acreage, and a large amount of dry land grazing, both open and timbered.

Plaintiff utility commenced these eminent domain proceedings in the district court of the fourth judicial district pursuant to the provisions of Chapter 99, Title 93, R.C.M. 1947. Both parties appealed the commissioners' award for the easement and depreciation in value of the remainder to the district court.

Following a jury trial before Hon. Edward Dussault, district judge, a judgment of $15,382.50 for the value of the 20.5 acre easement and $23,961.75 for depreciation in value to the

319.5 acre remainder was entered for defendant, pursuant to the verdict.

Plaintiff's motion for a new trial was denied by the district court and this appeal is taken from the judgment and the order denying a new trial.

Two issues are presented on appeal:

1. Whether sales comparable in size, but not in shape, to the land taken should have been admitted into evidence?

2. Whether the jury committed reversible error by not following court's Instruction No. 19 when it awarded $750 per acre for the easement?

First, considering plaintiff's objection to the evidence of comparable sales, we note this Court has approved the use of such evidence in eminent domain proceedings. State Highway Commission v. Jacobs, 150 Mont. 322, 328, 435 P.2d 274; State Highway Commission v. Tubbs, 147 Mont. 296, 303, 411 P.2d 739. Further, when the value of another piece of property is testified to for the purpose of showing the basis for an expert's opinion, as was done here, the requirement of similarity is not so strict. State Highway Commission v. Jacobs, supra.

Essentially plaintiff argues that the differences between the 80 foot easement and the residential tract sales testified to by defendant's expert are so great as to make the sales not judicially comparable. Yet it is well established that appellate review of comparable sale evidence admitted by the district court is limited. 5 Nichols on Eminent Domain, §21.31, pp. 21-54 to 21-59, states:

> "Similarity does not mean identical, but having a resemblance. Obviously, no two properties can be exactly alike, and no general rule can be laid down regarding the degree of similarity that must exist to make such evidence admissible. It must necessarily vary with the circumstances of each particular case. Whether the properties are sufficiently similar to have some bearing on the value under consideration, and to be of any aid to the jury, must necessarily rest largely in the sound discretion of the trial court, which will not be interfered with unless abused. The exact limits,

- 3 -

either of similarity or difference, or of nearness
or remoteness in point of time, is difficult, if
not impossible, to prescribe by any arbitrary rule,
but must to a large extent depend on the location and
the character of the property and the circumstances
of the case.  It is to be considered with reference
to the light thrown on the issue, and not as a mere
method of raising a legal puzzle."

The background of one Roy Rodenberger's testimony on

comparable sales and his opinion on value can be briefly summarized.

The area of the Wolfe ranch on Burnt Fork Creek, about eight miles

out of Stevensville had, in 1972, an attraction for rural home-

sites.  Its highest and best use was for that purpose.  Rodenberger

determined that certain sales of small homesite tracts were of

value in determining the ultimate value of the land taken here

and the damage to the remainder.  In this connection he was care-

fully examined, both on direct and cross.  A synopsis of his

thinking is probably best expressed in this question and answer

on cross-examination:

"Q.  And your theory was that if the transactions
that are in your list number one were indicative
of a twenty acre sale, they would be indicative of
the value of the land within the easement?

"A.  Yes, they would be indicative.  However, the lands
that are in these sales are regular tracts of land in a
planned manner, and there is no way to actually compare
a regular planned tract of land that may be oblong or
square or even triangular on the edge of a ranch, to an
eighty foot ribbon two miles through the center of the
ranch.  So, during the whole time of comparison I tried
to make these tracts regular in this ranch taking, and
the only way you can do it is take the forty-acre tracts
and say:  All right, what are they doing to this tract?
They are taking two and a third acres out of this tract,
and it's kind of on the edge.  The next forty-acre tract
they might be going right through the middle of it as
that overlay shows.  Although it is indicative of the
market, it isn't a true comparison because, I think, the
fact that it is splitting a piece of property in a eighty-
foot ribbon two miles long, which is definitely an irregular
type shape tract, these comparisons  are conservative on
the market on that type of a tract."

Plaintiff was taking, besides the easement, the use of

existing roadways and access by "reasonable means".  It was clear

that the quality of the land taken, the quantity, and the access

easement, were being considered and that because of all the circum-

stances the easement value was substantially the same as the fee

- 4 -

value, except for the grazing left. Mr. Rodenberger considered all of these matters.

However, plaintiff condemnor contends that the requisite elements of comparability of land values do not exist where a 20 acre fee homesite is likened to an easement strip 80 feet wide, and two miles long. That area alone cannot be a controlling consideration. We agree, but as shown by the foregoing quote of the appraiser Rodenberger, he did not literally do this.

We cannot conclude that the sales introduced as a basis for the opinion of defendant's expert amounted to an abuse of discretion by the district court. These recent sales involved tracts of similar sizes and did shed some light on the value of defendant's land for residential development. Differences between these tracts and the easement were thoroughly developed on both direct and cross-examination. Given this, it was for the jury to determine the weight to be given the comparable sales and the expert's appraisal. United States v. 84.4 Acres of Land, Etc., 348 F.2d 117, 119; Illnois Building Authority v. Dembinsky, 101 Ill.App.2d 59, 242 N.E.2d 67,69; Redevelopment Agency of Salt Lake City v. Mitsui Investment Inc., (Utah 1974), 522 P.2d 1370, 1373. We find no error.

The second issue raised on appeal is based on district court's Instruction No. 19, which reads:

> "You are instructed that the lands being valued in this case for the purpose of determining just compensation may not be valued at one amount within the area of the easement and at a different amount in other similar areas of the same tract. Where the lands are all in one tract, they must be considered together, and their fair market value determined accordingly." (Emphasis supplied.)

Plaintiff submits that the jury's award of $15,382.50 or $750 per acre for the 20.5 acre easement is contrary to this instruction. It is contended that since the highest value placed on the remainder was $500 per acre, application of this instruction required the jury to award not greater than $500 per acre for

- 5 -

the easement taken. In other words, plaintiff contends that
evidence of a lower value for the remainder controls the value
of the easement.

The jury here returned by the verdict two separate values,
$15,382.50 for the easement taken; and $23,961.75 for damages to
the remainder. The remainder was approximately 320 acres.
Plaintiff then to reach its thesis that Instruction No. 19 was
violated, argues since owner's witness Rodenberger testified that
the land outside the corridor of the easement had a value of $300
per acre; and the condemnor's witness Glasser testified that $500
per acre was a fair figure, that therefore, under the instruction
literally read, there was only evidence to support a figure of a
maximum of $500 per acre rather than $750 per acre as found by the
jury. Rodenberger had testified to a figure of $1200 per acre for
the land taken. We realize that to follow the argument and logic
of the condemnor is difficult. Court's Instruction No. 19 cannot
be read out of context in a literal manner. It must be read and
understood in the light of the case.

Instruction No. 19 commands only that the lands be
"considered together and their fair market value determined
accordingly." It does not require a lower appraisal for one area
of a tract to control a higher appraisal for other areas of the
same tract. The instruction simply requires the jury to arrive
at one value for the lands in the tract.

Instruction No. 15, states:

"You are instructed that just compensation should
be arrived at by considering the following:

"1. The value of the property sought to be
condemned.

"2. If the property sought to be condemned con-
stitutes only a part of a larger parcel, the depre-
ciation in value, if any, which will accrue to the
portion not sought to be condemned, by reason of its
severance from the portion sought to be condemned,
and the construction of the improvements in the manner
proposed by the Plaintiff." (Emphasis supplied).

- 6 -

Clearly this instruction contemplates jury consideration of evidence of the value of the easement as well as damage to the remainder. Earlier in this opinion we approved evidence of comparable sales upon which an expert's appraisal of $1200 per acre for the easement taken was based. It is not disputed that appraisals of the value of the remainder ranged from $300 to $500 per acre. Thus considering the lands together as required by the court's Instruction No. 19, the jury had a permissible range of values from $300 to $1200 per acre from which it could determine its award of just compensation.

Presented with this range of values and following the instruction of the court, the jury selected the mean value of $750 per acre as the basis of its award. This value for the easement is obviously within the evidence available to the jury and thus not obviously and palpably out of proportion to just compensation requiring interference with the findings of the jury by this Court. State Highway Commission v. Jacobs, supra.

Finding no prejudicial error in admission and use of comparable sales data and misapplication of the court's instructions, the judgment is affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices.