No. 12747

IN THE SUPREME COURT OF THE STATE OF MONTANA

1975

---

MEAGHER COUNTY NEWLAN CREEK WATER DISTRICT, Incorporated under the Laws of the State of Montana, and MEAGHER COUNTY, a Political Subdivision of the State of Montana,

Plaintiffs and Respondents,

-vs-

LESTER J. WALTER AND LENA MAE WALTER, husband and wife, and the UNITED STATES OF AMERICA,

Defendants and Appellants.

---

Appeal from: District Court of the Fourteenth Judicial District, Honorable Nat Allen, Judge presiding.

Counsel of Record:

For Appellants:

Bolinger and Wellcome, Bozeman, Montana
H. A. Bolinger argued, Bozeman, Montana

For Respondents:

John V. Potter, Jr. argued, White Sulphur Springs, Montana

---

Submitted: November 4, 1975

Decided: MAR - 5 1976

Filed:

Thomas J. Kearney
Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

This is an appeal from judgment entered on a jury verdict in a condemnation action tried before the district court, Meagher County. Defendants Lester J. Walter and Ina Mae Walter, were owners of ranch lands condemned by plaintiffs in order to construct a multi-purpose reservoir.

Walters' land was condemned for construction by the Meagher County Newlan Creek Water District for a dam on Newlan Creek. Incident to construction of the dam, it was necessary to acquire additional land for the pool area above the dam and the outflow structures below the dam. The dam itself, the outflow area, and much of the pool areas are located on what was Walters' land.

The work plan for the dam called for the use of three separate parcels of land in Sections Eleven (11) and Fourteen (14), Township Ten (10) North, Range Six (6) East, M.P.M. Tract One was subject to a fee taking consisting of 283.597 acres. Tract Two was subject to a temporary easement giving the Water District the right to enter and remove fill materials for a period of five years on 96.682 acres. Tract Three was subject to a permanent easement on 15.1 acres for construction, maintenance, and use of a discharge canal. The land subject to the fee taking and the permanent easement consists of approximately 70 acres of bottom land along Newlan Creek and 230 acres immediately adjoining the bottom land. In addition, Walters' home was taken.

Prior to trial, a commissioners' hearing was held. The commissioners determined just compensation to be in the amount of $160,079.65. This award was appealed by the Water District through the filing of a complaint in condemnation on January 30, 1974. The Landowners appeared by motion to dismiss and answer, objecting to the Water District's power of condemnation. The

matter proceeded to hearing before the district court on February 21, 1974. On March 29, 1974, the district court entered a "PRELIMINARY ORDER OF CONDEMNATION" wherein it ordered that the land and interests in land be taken by the Water District upon making just compensation as provided by law. On April 16, 1974, Landowners petitioned this Court ex parte for extraordinary relief in the form of a writ of prohibition. An order to show cause was issued, an adversary hearing followed with subsequent denial of the relief sought by this Court's order (State ex rel. Walter v. District Court, 164 Mont. 539, 521 P.2d 193). Prior to trial, an offer was made by the Water District in the amount of $81,010. The offer was not accepted and the matter proceeded to trial. The jury awarded:

(1) Total fair market value of property sought to be appropriated (including fee taking, permanent and temporary easement)....................$60,268

(2) Depreciation accruing to remainder..............................$ 9,000

(3) Amount remainder will be benefitted.............................$ None.

Judgment was entered on the verdict. Walters filed a motion for new trial, which was denied. It is from the judgment and denial of a new trial that Walters appeal.

Appellants present several issues for review but we discuss only two.

First: Was the issue of the Newland Creek Water District's power of condemnation res judicata by virtue of this Court's order of April 29, 1974? (State ex rel. Walter v. District Court, 164 Mont. 539, 521 P.2d 193.)

Second: Did appellants receive just compensation for the public taking of their land as required by Article II, Section 29, 1972 Montana Constitution?

First. The doctrine of res judicata states that a final

judgment on the merits by a court of competent jurisdiction is conclusive as to causes of action or issues thereby litigated, as to the parties and their privies, in all other actions in the same or any other judicial tribunal of concurrent jurisdiction. 46 Am Jur 2d, Judgments, § 394. Appellants argue that this Court's order of April 29, 1974, denying the extraordinary relief sought was not on the merits and therefore was not res judicata. With this contention, we cannot agree. The order in cause #12742, State ex rel. Walter v. District Court, 164 Mont. 539, 540, 521 P.2d 193, states:

> "On the return day briefs were filed, a motion to quash by respondents, counsel were heard in oral argument and the matter taken under advisement. The Court now being advised, and giving consideration to the petition, exhibits, briefs, and oral arguments, it is ordered that the relief sought be denied and the proceeding is ordered dismissed."

It was during the show cause hearing on appellants' petition for a writ of prohibition that the Water District's power to condemn was challenged by appellants. This Court denied the relief sought because briefs and oral argument demonstrated there was no merit to appellants' contention under Montana law. It is established that a right, question, or fact distinctly put in issue, as was done here, and directly determined by a court of competent jurisdiction cannot be disputed in subsequent actions between the same parties or their privies. Montana Eastern Pipe Line Company v. Shell Oil Company, (D.C. Mont.) 216 F.Supp. 214. Where, as here, there was no written opinion explaining the basis for the Court's order but the denial was intended to be on the merits, the denial of relief sought is res judicata. McDonough v. Garrison, 68 Cal.App.2d 318, 156 P.2d 983. Finally, this Court in Butler v. Brownlee and Dist. Ct., 152 Mont. 453, 457, 451 P.2d 836, stated:

"A judgment not appealed from is conclusive between

the parties as to all issues raised by pleadings actually litigated and adjudged as shown on the face of the judgment and reasonably determined in order to reach the conclusion announced." (Emphasis supplied.)

Second. Appellants contend they were denied just compensation for the public condemnation of their land. We agree.

Just compensation for a public taking of private land is to be computed as: fair market value of land taken *plus* (value of remainder before taking - value of remainder after taking). Section 93-9912, R.C.M. 1947; State Highway Commission v. Emery, 156 Mont. 507, 481 P.2d 686; Montana State Highway Comm'n v. Jacobs, 150 Mont. 322, 435 P.2d 274. Upon review of the entire record in this case, this Court finds that neither the award of severance damages to the remainder nor the compensation for property taken were supported by substantial evidence.

Considering first the severance damages to that part of appellants' land not taken, it is obvious that the condemnation resulted in excising the very heart out of their ranch. A review of the trial transcript demonstrates this to be the case. The fee taking will result in the permanent loss of 70 acres of appellants' bottom land leaving only 8 acres for immediate use and 15 acres in the temporary easement area which are not usable until after reclamation five years hence. Because this bottom land provides hay, pasture, and wintering grounds for appellants' cattle, it is important to the operation of the ranch. In addition, appellant Lester Walter testified that two of his best stock water springs were within the fee taking area. Other springs are still available to appellants, but several of these either dry up, have poor access, or are situated on land owned by someone else.

This uncontradicted testimony becomes extremely important when the highest and best use of appellants' land is considered.

By the Water District appraiser's own admission, such highest and best use of the land is as a small stock ranch. That the condemnation action would be detrimental to such an operation is easily perceived. Before the taking, appellants ran 40 or more head of cattle without purchasing hay and rented out pasture for approximately 200 additional head. Norman Wheeler, a farm and ranch consultant, testified appellants' land prior to the taking could carry 125 head. However, after the taking an entirely different situation exists. With the disappearance of two good stock water springs and most of the bottom land used for pasture and hay, much of what the cattle ranch depended upon for sustenance is gone, with the resulting substantial depreciation in the remainder. That damages to remaining land have been allowed in such situations becomes apparent upon a survey of authority. 27 Am Jur 2d, Eminent Domain, § 311, provides:

> "Damages to remaining land that have been allowed or considered in determining compensation include * * * *permanent interference with farming*, as distinguished from temporary interference or inconvenience. * * *" (Emphasis supplied.)

See also Trunkline Gas Company v. O'Bryan, 21 Ill.2d 95, 171 N.E.2d 45.

In the instant case, the interference with the operation of appellants' property as a stock ranch by the condemnation is permanent and so substantial that the $9,000 awarded by the jury as damages to the remainder can hardly be considered adequate.

As to compensation for that part of appellants' land taken, this Court finds the jury award to be inadequate as it was not based on substantial evidence.

The method of valuation for the land taken used by the Water District's appraiser Howard Sparhawk was comparable sales. Such a basis for expert opinion has been ruled an acceptable means of valuation for a taking of this nature, with the extent

of comparability going to the weight of the evidence rather than to its admissibility. Montana Power Co. v. Wolfe, ____Mont. ____, ____P.2d____, 33 St.Rep. 172; U.S. v. 45,131.44 Acres of Land, 483 F.2d 569; U.S. ex rel. T.V.A. v. Easement and Right of Way, 405 F.2d 305.

We find the problem in the instant case is that the weight given to such appraisal by the jury is simply not supported by the evidence. At trial, Sparhawk testified that since he believed there were ample comparable sales in Meagher County from which an evaluation could be made, he did not feel the need to investigate the possibility of comparable sales in surrounding counties. However, upon review of the evidence presented, it becomes apparent that Sparhawk's reliance on Meagher County sales was misplaced. Of the approximately forty-seven Meagher County ranch sales pointed out on a map by Sparhawk, he readily admitted, through nine pages of testimony, that all but four or five such sales were low and not comparable.

Then upon cross-examination, Sparhawk's testimony revealed serious deficiencies in the basis for his opinion that these few sales were in fact comparable to the appellants' property and thus could be used in determining the fair market value of appellants' property. When questioned about the allegedly comparable Holiday to Jorgenson sale, Sparhawk admitted he had not computed the carrying capacity of the ranch land involved in that sale. As to sale #29, the Weingartner property, Sparhawk admitted the water facilities on such property were poor in contrast to appellants' property. Concerning sales #5 and #47 relied upon by Sparhawk, it was revealed the property was situated at an altitude of 6,500 feet and no mention was made of bottom land. Appellants' property was situated at a considerably lower altitude, 5,500 feet, and contained good bottom land. Sale #30,

the Cook to Ward sale, was an estate sale but there was some question as to whether any competitive bidding had taken place before that sale. Finally, Sparhawk's testimony as to his evaluation of the Manger property (#39, #40, #41), the sale which he placed the most credence on in appraising appellants' land revealed serious shortcomings. Under the persistent questioning of appellants' attorney, Sparhawk admitted he had no knowledge of the carrying capacity of the Manger property nor had he made an appraisal of that property or even investigated its range land in detail. As the final blow to the basis of Sparhawk's appraisal, he admitted that actual comparable sales did not exist in Meagher County!

On the basis of the testimony of the Water District's own appraiser, this Court finds it impossible to accept the weight given by the jury to his valuation of appellants' property in its compensation award for land taken. This is so especially in view of the fact Sparhawk did not go outside Meagher County in his search for comparable sales whereas Wheeler, one of appellants' expert appraisers, testified as to sales in other counties which he believed to be comparable, sales which indicated a considerably higher price per acre.

It is an established principle of law in condemnation proceedings, as well as other types of actions, that a jury finding will not be disturbed unless obviously and palpably out of proportion to the injury done. State Highway Commission v. Bennett, 162 Mont. 386, 513 P.2d 5; State Highway Commission v. Jacobs, 150 Mont. 322, 435 P.2d 274; State Highway Commission v. Manry, 143 Mont. 382, 390 P.2d 97. Such a situation exists in the instant case. With the heart taken out of appellants' land, substantial evidence does not exist to support the inadequate award of $9,000 damage to the remainder. Weighing the weak

attempts by respondent to establish comparable sales in Meagher County as a basis for Sparhawk's appraisal against evidence presented by one of appellants' appraisers of much higher comparable sales in surrounding counties, the compensation given for land was also inadequate.

Jury Instruction No. 9 states that the proper amount to be paid by the Water District for the use of Tract Two consists of consideration for the removal of the fill material " * * * added to the damages that would accrue by loss of use of such parcel for a period of five years." (Emphasis supplied.) However, the testimony of the Water District's appraiser indicates that he calculated the compensation for use of Tract Two as mere rental value in the amount of $4,285, over a period of five years with no consideration given for the taking of 800,000 cubic yards of fill material. An examination of the jury award for the right to enter and remove fill material indicates compensation in the amount of $4,544. Thus it would seem the jury awarded very little for the removal of 800,000 cubic yards of fill material, with most of the award on Tract Two going to rent, as calculated by the Water District's appraiser. To that extent the compensation for Tract Two is inadequate.

Accordingly, the judgment of the district court is reversed and the cause is remanded with orders to grant a new trial.

Gene B. Daly
Justice

We concur:

Chief Justice

Frank I. Haswell
John Conway Harrison
Wesley Castles
Justices