No. 13156

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

---

STATE OF MONTANA, acting by and through
the Department of Highways,

Plaintiffs and Appellants,

-vs-

EDWARD C. LAHMAN and MARGARET K.
LAHMAN, husband and wife,

Defendants and Respondents.

---

Appeal from: District Court of the Third Judicial District,
Honorable Judge James D. Freebourn, presiding

Counsel of Record:

For Appellants:

Frank Meglen argued, Helena, Montana

For Respondents:

Mulroney, Delaney and Dalby, Missoula, Montana
Dexter Delaney argued, Missoula, Montana

---

Submitted: January 20, 1977

Decided: MAY 24 1977

Filed: MAY 24 1977

*Thomas J. Kearney*
Clerk

Mr. Justice Frank I. Haswell delivered the Opinion of the Court.

Plaintiff, Department of Highways, appeals from a judgment for the landowners in the amount of $125,660, entered after a jury trial in the district court of Powell County.

Defendants Edward C. and Margaret K. Lahman own a 415.9 acre tract of land southeast of Garrison, Montana. The State condemned 77.3 acres of defendants' land for the purpose of constructing a section of Interstate 90, and an interchange for the community of Garrison; another 1.6 acres of defendants' land were condemned for construction permits. Defendants operate a trailer park-campground on the property.

Defendants valued the property at $300,000 prior to the taking. Their estimate of the fair market value of the land taken and the depreciation to the remaining land was $200,000. Enclosed in this later figure is $24,000 due to depreciation by reason of impairment of access. The State made a motion in limine asking to restrict testimony on impairment of access which the State claimed was merely a euphemism for diversion of traffic caused by the change of traffic flow and not compensable. The motion in limine was denied by the district court. Defendants then presented testimony regarding value and depreciation caused by impairment of access.

Defendants' original tract is irregularly shaped. The southern boundary is a railroad right-of-way which follows the flow of the Clark Fork River in a gradual northerly curve along the more erratic path of the river. The northern boundary follows the survey line in a descending stair step pattern using the sides of a quarter section as the width and height of the steps. The descending stair step pattern and the railroad right-of-way intersect forming the eastern boundary of defendants' land. The northward sloping curve of the railroad right-of-way and the "top step" are connected by a short straight line to form the western

- 1 -

boundary of the tract.

The parcel of land condemned for the right-of-way has the shape of a "Y" lying on its side. The tail of the "Y" shaped highway right-of-way begins at the eastern boundary of defendants' land and follows the railroad right-of-way for about a third of the length of defendants' land. At that point it departs sloping upward until it very nearly bisects the defendants' land by its path. At a point about two-thirds of the way through defendants' tract, the highway right-of-way splits and forms the arms of the "Y". The northern arm is a westbound exit into Garrison and the southern arm is an Interstate right-of-way which continues parallel to the railroad right-of-way bisecting defendants' land.

A reproduction of the ownership sketch of the take is included here to illustrate the description of the tract.



The result of the odd shape of the State's right-of-way taking, is that defendants' remaining property is divided into three parcels. The largest is about 205 acres and is the part of the original tract north of the Interstate right-of-way and east of the northern arm of the "Y". The second parcel is the section of the original tract located south of the Interstate right-of-way and is about 100 acres. The third parcel is the

part of the original tract which lies between the arms of the "Y". This parcel contains defendants' residence and business which is a mobile home court and a recreational camping area.

The State appeals from the district court's denial of its motion for a new trial and raises two issues for review:

(1) The admissibility of testimony in a condemnation action for damages caused by impairment of access.

(2) The admissibility of testimony on value based on comparable sales from witnesses who had made sales but had not made an appraisal nor determination of the highest and best use of the subject land.

Issue 1.

The first issue arises from testimony by defendant and his expert witness, Roy Rodenberger, concerning the diminution in value of defendants' land and business due to the construction of the highway. Defendant and Rodenberger testified over the State's objection that defendants' property would be reduced in market value by two-thirds. These witnesses stated that their opinions were based upon the factors of: total deprivation of the recreational amenities of the Clark Fork River, partial deprivation of the recreational amenities of the Little Blackfoot River, deprivation of aesthetic features such as view and scenery by the 41 foot highway grade, increased noise, a limitation on existing area with which to expand and improve the trailer park facilities, along with an unreasonable impairment of access.

The basis of the State's objection to this testimony was their theory that the only possible damage suffered by defendants was an impairment of access and such damage is noncompensable.

The State is correct in its contention that damages for strict impairment of access are noncompensable. State v. Hoblett, 87 Mont. 403, 288 P. 181. In State v. Peterson, 134 Mont. 52,

68, 72, 328 P.2d 617, we stated:

> "'The owner of land abutting on a highway established by the public has no property or other vested right in the continuance of it as a highway at public expense, and, at least in the absence of deprivation of ingress and egress, cannot claim damages for its mere discontinuance, although such discontinuance diverts traffic from his door and diminishes his trade and thus depreciates the value of his land.'

> " * * *

> " * * * But the fact remains that the former highway remains just as it was before and defendants' easement of access is not interfered with or in any way damaged. Stripped of misleading arguments and statements, defendants' claim for damage to the remaining property is nothing more than damage by reason of diversion of traffic from their door and resulting loss to business. This is in the nature of damnum absque injuria."

The damages involved in the instant case however, are not solely attributable to an impairment of access. Defendant is suffering damages caused by the severance of the portion of his property being used for a mobile home park and campground from the balance of his property. The record is perfectly clear that a great deal of the value of the mobile home park-campground area is directly attributable to the aesthetic amenities of the balance of defendants' property.

This Court has discussed damages for partial taking and decrease in value to the remainder of the parcel in State v. Hoblitt, 87 Mont. 403, 408, 288 P. 181:

> "Ordinarily damages may be awarded only for injury done to the particular lot or tract of land from which the right of way strip is taken, and the above rule is applied in ascertaining the award to be made by a determination of the value of the acreage taken, and the depreciation in value of the remainder of the particular tract, regardless of what other lands the owner may possess (sec. 9944, Rev. Codes 1921, [now R.C.M. 1947, § 93-9912]; Lewis and Clark County v. Nett, 81 Mont. 261, 263 P. 418), but, even where two tracts are separated by a highway or watercourse, or, as here, by a railway, if they are used jointly by the owner in a single enterprise and the whole plant is depreciated in value by the proposed improvement, the direct damages suffered may be compensated."

- 4 -

(See also State v. Bradshaw Land & Livestock Co., 99 Mont. 95, 43 P.2d 674; Montana R. R. Co. v. Freeser, 29 Mont. 210, 74 P. 407.)

The district court did not commit error in admitting the testimony of defendant and Rodenberger concerning the reduction in value of defendants' property. The long standing rule in this jurisdiction is that the measure of damage in a condemnation proceeding is the fair market value of the land sought to be condemned with the depreciation of such value of the land from which the strip is to be taken, less allowable deductions for benefits proven. Lewis and Clark County v. Nett, 81 Mont. 261, 263 P. 418; State Highway Comm'n v. Emery, 156 Mont. 507, 481 P.2d 686. Defendants have suffered damage by the severance of their business property from their adjoining recreational property and are entitled to present evidence in order to establish such damage.

This Court adheres to the rule that in eminent domain proceedings the jury verdict will not be disturbed on appeal unless it is obviously out of proportion to the injury to the land taken. State Highway Comm'n v. Manry, 143 Mont. 382, 390 P.2d 97; State Highway Comm'n v. Peterson, supra and cases cited therein. We find no such gross unfairness in the jury's award and therefore will not disturb it.

Issue 2.

The State raises a question concerning the testimony of two witnesses, Don Valiton and Frank Shaw. Shaw is a real estate broker in the area and he testified generally to the existence of a demand for rural homesites in the Garrison-Deer Lodge area and to a wide range of prices paid for land similar to that owned by defendants. Valiton testified to the number of sales, the price and the specific character of the rural homesites he had sold. He testified to the similarities and differences between

- 5 -

this land and that of defendants. Both witnesses testified they were familiar with defendants' property.

The State relies on State Highway Commission v. Greenfield, 145 Mont. 164, 170, 169, 399 P.2d 989, as support for its contention that one who is not an expert/appraisal of the land in question may not testify as to the value of the land. In Greenfield there appears a thorough discussion of the admissibility of comparable sales prices allowed into evidence over a hearsay and best evidence objection. There the Court said:

and who has not made an expert

> "' * * * From a practical standpoint, if each
> person previously involved in effecting comparable
> sales should have to be called to the stand to
> establish the detailed facts of such sales, it
> would lengthen litigation of this kind out of all
> reason and would make it almost impossible for
> the State or defending landowners to make a proper
> showing as to valuation opinion within a reasonable
> time and at reasonable expense. * * *'"

However, in considering this Court's opinion in Greenfield, the State failed to note that portion of the Court's opinion wherein we held, in allowing the testimony of a landowner, that:

> "In so approving this form of testimony we place
> a burden on the trial judge to test the expertise
> of the witness as to local real estate business.
> State Highway Comm'n v. Peterson, 134 Mont. 52,
> 328 P.2d 617; State Highway Comm'n v. Keneally,
> 142 Mont. 256, 384 P.2d 770. The party calling
> such expert witness must also satisfy the trial
> court that the sales were recent, in the vicinity,
> and involving land comparable to the land in issue."

This is precisely what happened in the instant case. The trial court considered the credentials of witnesses Valiton and Shaw and allowed their testimony. There can be no argument that the evidence as to comparable sales is relevant. State Highway Comm'n v. Jacobs, 150 Mont. 322, 435 P.2d 274; State, Department of Highways v. Schreckendgust, ____Mont.____, 551 P.2d 1019; 33 St.Rep. 568; Montana Power Company v. Wolfe, ____Mont.____, 545 P.2d 674, 33 St.Rep. 172; Montana R'y Co. v. Warren, 6 Mont. 275,

12 P. 641.

It is clear the determination of the competency of witnesses to testify in a condemnation case as to property valuation is within the discretion of the court. In 2 Lewis, 3rd ed, Eminent Domain, §656, p. 1127, it is said that all that is required is:

> " * * * It must appear that he [the witness] has some peculiar means of forming an intelligent and correct judgment as to the value of the property in question beyond what is presumed to be possessed by men generally."

See: State Highway Comm'n v. Keneally, 142 Mont. 256, 384 P.2d 770.

Here, both witnesses were familiar with rural homesite land sales and defendants' land. The district court found them competent to testify and their testimony was relevant. While the court could have refused to allow this testimony based on considerations of judicial economy to prevent cumulative testimony, section 93-1901-3, R.C.M. 1947, here it is not error to refuse to exclude such relevant evidence. State Highway Comm'n v. Greenfield, supra.

For the foregoing reasons the judgment of the district court is affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____
Justices

- 7 -

Mr. Justice John Conway Harrison dissenting:

I dissent. For the past 19 years State v. Peterson, 134 Mont 52, 68, 72, 328 P.2d 617, has been the ruling case law of this state on the issue of abutting property owner's rights. Until today, Peterson has been one of the most cited and relied upon decisions of this jurisdiction in the field of eminent domain litigation. Our departure from that holding will in my opinion seriously affect litigation in future eminent domain cases.

I would reverse the trial court on the first issue, relying on Peterson and a host of cases since that holding. In Peterson this Court held:

> "'The owner of land abutting on a highway established by the public has no property or other vested right in the continuance of it as a highway at public expense, and at least in the absence of deprivation of ingress and egress, cannot claim damages for its mere discontinuance, although such discontinuance diverts traffic from his door and diminishes his trade and thus depreciates the value of his land.'

> "* * *

> "But the fact remains that the former highway remains just as it was before and defendants' easement of access is not interfered with or in any way damaged. Stripped of misleading arguments and statements, defendants' claim for damage to the remaining property is nothing more than damage by reason of diversion of traffic from their door and resulting loss to business. This is in the nature of damnum absque injuria." 134 Mont. 68,72.

The testimony of the expert appraiser as to the loss of value to the residential and commercial parcel because of loss of convenient access to that parcel is in effect testimony about the loss of business due to the rerouting of the highway and that loss is not compensable. It was error to admit that testimony. State v. Hoblitt, 87 Mont.403, 411, 288 P. 181; State v. Thelberg, 87 Ariz. 318, 350 P.2d 988; Troiano v. Colorado Dept. of Highways, 170 Colo. 484, 463 P.2d 448. Mabe v. State, 83 Idaho 222, 360 P.2d 799.

_Signature_
Justice.

- 8 -