Ark. State Highway Comm. *v.* Taylor.

5-3281                                                   381 S. W. 2d 438

Opinion delivered June 1, 1964.

[Rehearing denied September 14, 1964.]

*Mark E. Woolsey, Don Gillaspie, Don Langston,* for appellant.

*Bethell & Pearce,* for appellee.

Paul Ward, Associate Justice. In 1955 James F. Taylor and T. J. Van Zant (appellees herein), real estate developers, purchased approximately 60 acres of land on the eastern limits of Fort Smith. They promptly began to develop the parcel of land as a redistricted residential subdivision called "Eastern Hills Addition." A plat showing 115 separate building lots was filed. Streets (with minor exceptions) were laid out and improved, and most utilities (such as curbs, gutters, water pipes, gas pipes, electric light and power poles, and sanitary sewers) were installed.

Prior to June 15, 1962 appellees had sold 37½ lots upon most of which individual residences had been erected. On the date above mentioned the Arkansas Highway Commission (appellant herein) condemned and took possession of a strip of land off the east side of the development area for the purpose of constructing a segment of the Interstate Highway System. The development area (60 acres) is in the shape of a rectangle.

the north and south measurement being approximately ⅓ longer than the east and west measurement. Within the area is what appears to be a swag or gulch (not suitable for building lots) consisting of 9.1 acres, called tract A. It runs in a northeasterly direction (in the north portion of the area) from near the west line to the east line.

The portion taken by appellant embraces 41 building lots in whole or in part (29 in whole and 12 in part) and a portion near the middle of tract A. Appellant deposited $117,500 to reimburse appellees for the land taken. Appellees, by proper pleadings, asked the court to award them the sum of $350,000 as just compensation for the property taken and damaged. A lengthy trial resulted in two verdicts in favor of appellees: $180,000 for the property taken in whole or in part, and $5,683 for damage to certain of the remaining lots.

On appeal appellant seeks a reversal on three separate points or assignments of error. Since we have reached the conclusion that the judgments must be reversed and the cause remanded for a new trial, we deem it sufficient to set forth such testimony only as relates to the errors hereafter pointed out.

*One.* At the beginning of the trial appellant contended it was liable to appellees only for the lots or land actually taken. This contention was based on the theory that each individual lot in the subdivision constituted a ''unit'' of value. On the other hand appellees took the position that the entire tract of land (60 acres) should be considered the ''unit'' of value. The distinction is of course vital. If the whole tract is considered as a unit, then appellees would be entitled (under the familiar rule of this court) not only to the value of the land actually taken, but to any depreciation in value (caused by the taking) to the balance of the tract of land. In a pre-trial conference the trial court upheld appellees' theory, holding all the lots, or the entire 60 acres, constituted a unit of value. This holding, we think, was contrary to the weight of authority pertaining to this kind of situation.

Nichols, *On Eminent Domain* (3d Ed., Vol. 4, § 14.3, p. 707) states:

"It is well settled that when the whole or a part of a particular tract of land is taken for the public use, the owner of such land is not entitled to compensation for injury to other separate and independent parcels belonging to him which results from the taking . . ."

In *Wellington* v. *Boston & M. R. R. Co.*, 164 Mass. 380, 41 N. E. 652, there was a recorded plat and streets were in, and many of the lots platted were in separate ownerships. This case is very similar to the facts at bar in this respect. There the Court said:

"Upon the evidence, all the other lands of the petitioners had been made separate and distinct parcels by transforming the locality into a village with wrought and travelled streets, and making all the land not included in the streets into exactly defined house lots, some of which had been sold to other persons, and each of which then owned by the petitioners was held for the distinct purpose of independent sale. Whether a particular lot of land constitutes and independent parcel is a question which cannot be determined in the affirmative by the mere fact that it is separated from other land by a highway or street, or by paper lines, or by fences; nor can it be determined in the negative by the mere fact that it is all in one ownership, and is not divided by streets or by paper lines. But when, as in the present case, the evidence shows that there is an actual division by streets, wrought and in use for travel, and by recorded paper lines, and there is no evidence that any two of the lots are used together, or are held for sale as one parcel, and the only use shown is a separate and distinct use and holding of each lot by itself, we think each lot is a separate and distinct parcel."

A portion of the above case pertinent here was quoted with approval by this Court in *Kansas City Southern Railway Co.* v. *Boles,* 88 Ark. 533, 539, 115 S. W. 375. In that case we also find this statement:

"This testimony was competent to show the connected use of the lots. Although the lots are separated by an alley, they may be said to be contiguous and may be treated as parts of a single tract for the purpose of determining damages in condemnation proceedings, if the testimony shows that they are used as a unit."

There is no testimony in the record here to show that any one of the lots (which appellees still own) is used or is to be used in connection with any other lot.

In opposition to the above, appellees rely heavily on the case of *St. Louis, Iron Mountain & Southern Railway Co.* v. *Theodore Maxfield Co.,* 94 Ark. 135, 126 S. W. 83. There, Maxfield, who owned a tract of land adjacent to the town of Batesville, had it platted into lots and blocks intending to have it annexed, but had not done so. Later appellant condemned a right-of-way approximately 100 feet wide across the entire tract of land. The only question was the amount of damages to be recovered. In resolving that question this Court said Maxfield could recover for the land taken "and the depreciation of the market value of the remaining portion." For several reasons we do not feel bound here by the decision. In the cited case only four lots had been sold, streets had not been opened up, the land (surrounded by a fence) was being "cultivated as a farm" up to the time suit was filed. A careful reading of the case reveals that the principal issue was whether the best use of the land was for farming or building sites. Our research reveals that although the *Maxfield* case has been cited with approval by this Court several times it has never been cited to sustain the point relied on here by appellees.

Although the judgment for $5,683 must be reversed because of the error above indicated, this does not mean that appellees cannot, under any facts or circumstances, recover anything for damages to property or lots not taken. First, we point out that tract A was severed by the right-of-way. Appellees, we think, would be entitled to recover for any damage done (by the severance) to the two portions of tract A not taken. Also, appellees

have the right to show any special damage (to any lot not taken) not suffered by the public in general, and as more fully defined in the case of *Arkansas State Highway Commission* v. *Troy McNeill et al*, 238 Ark. 244, 381 S. W. 2d 425, being handed down this day.

*Two.* Over appellant's objection the court gave the following instruction:

"In considering the question of whether the remaining lands of the owner have been damaged or depreciated in market value, you may consider the elements of compensable damage as are established by a preponderance of the evidence, including the effect of the taking or subdividing the land which remains, the cost of restoring the land that remains to a useful purpose, the effect which may result from altering the grade of surrounding property, impairment, if any, of view, air, and accessibility of remaining property, and any other damage which you find from a preponderance of the evidence reasonably flows from the taking of the property."

In view of what we have already said under the first point we see no necessity of discussing this point exhaustively. This instruction of course relates to lands not actually taken, and it is based on the erroneous assumption that the entire tract constitutes a unit of value. Again, we point out, as we did under the first point, appellees are entitled to be recompensed only for such damages as are special—not suffered by the general public. See: *Arkansas State Highway Commission* v. *Bingham*, 231 Ark. 934, 333 S. W. 2d 728. Also there is another error in the instruction. After recounting several elements of damages which the jury might consider, the court said, "and any other damage which you find from a preponderance of the evidence reasonably flows from the taking of the property." That language, we think, left too much to the discretion of the jury, especially under the unit value we have previously approved.

*Three.* It is also our conclusion that the court erred in permitting the introduction of certain testimony bearing on the market value of the lots which were taken by

appellant. Appellee, Taylor, properly testified in detail as to the improvements placed on the land, the expenses incurred, and what each individual lot was worth at the time of taking. In doing so he exhibited a price list, and explained how he arrived at the value of each lot on the basis of so much a front foot. On cross examination, in an effort to justify the prices he had named, Taylor explained that the price list did not reflect the correct value of the lots because of "exclusive listings" he held. To explain: appellees would sell a lot to a builder for $4,000 and require the builder to give him (Taylor) the exclusive right for 90 days to sell the house and lot for a 5% commission; if the house and lot sold for $20,000 he would receive a commission of $1,000—thus making the lot worth $5,000 instead of $4,000. Repeatedly, but without success, appellant requested the court to instruct the jury not to consider this testimony in arriving at the market value of the lots taken by appellant. For several reasons we think this type of testimony was not competent. The record reflects that in many instances Taylor alone got the commission; there was no way to be certain that a house would be sold during the term of the exclusive listing; the size of the commission would depend on the sales price which normally would vary; and, finally it would seem reasonable that considerable time, effort and expense would be involved in making such real estate transactions, but none of these items was taken into consideration.

Appellees have cross-appealed on the ground that the court erred in refusing to give three instructions requested by them. We believe it would serve no useful purpose to discuss these instructions. We have carefully examined each of them and find no reversible error in the court's action.

We find no merit in appellees' contention that they should be given all or part of their costs expended in supplying portions of the abstract which should have been supplied by appellant. Rule 9 (d) of this Court requires the appellant to furnish an abstract which will give "an understanding of all questions presented to this Court

for decision'' and Rule 9(e) gives us power to adjust costs when it is necessary for appellee to supply a deficiency in appellant's abstract. Since the issues raised by appellant pertain almost entirely to questions of law, we find that appellant's abstract complies substantially with the requirements of Rule 9(d).

It is our conclusion therefore that the judgments must be reversed, and the cause is remanded for a new trial.

Reversed and remanded.