THE CITY OF LAKE FOREST, Plaintiff-Appellee, *v.* FIRST NATIONAL BANK OF LAKE FOREST *et al.*, Defendants-Appellants.

Second District   No. 76-512

Opinion filed October 5, 1977.

Paul G. Chromek, of Schaumburg, for appellants.

Murray R. Conzelman, of Waukegan, and Thomas H. Compere, of Lake Forest, for appellee.

Mr. JUSTICE BOYLE delivered the opinion of the court:

Plaintiff-appellee, City of Lake Forest, hereinafter referred to as "Lake Forest," brought an eminent domain action against a certain lot in Lake Forest. At the time the petition to condemn was filed, the lot in question was leased to defendant-appellant, Union Oil Company of California, hereinafter referred to as "Union Oil." After cancelling its lease, Union Oil filed an answer to the petition to condemn, claiming damages for the leasehold taken. At the same time Union Oil filed a cross-petition for damages to a lot it owned in fee which is located adjacent to the lot which Lake Forest seeks to take by eminent domain. Based on the pleadings and Union Oil's answers to certain interrogatories, Lake Forest moved to strike Union Oil's answer and cross-petition. The trial court granted the motion, from which Union Oil now appeals.

Union Oil raises two contentions in its appeal. First, it asserts it is entitled to compensation for the value of the leasehold taken. Secondly, Union Oil asserts that the condemned lot and the adjacent lot, which Union Oil owns in fee, must be considered as one parcel of land, thereby entitling Union Oil to compensation for damages to its lot which it contends is a remainder. We find Union Oil's contentions to be without merit, and we therefore affirm the judgment of the circuit court of Lake County.

On February 28, 1975, Lake Forest filed a petition to condemn the entirety of a certain lot owned by the First National Bank of Lake Forest as trustee for John F. Leonardi. On that date the lot was leased to Union Oil, which also owned an adjoining lot in fee simple absolute.

On March 31, 1975, Union Oil exercised its right under the terms of the lease between it and the First National Bank of Lake Forest and cancelled the lease effective April 30, 1975. On April 16, 1975, Union Oil filed an answer to Lake Forest's petition to condemn. Union Oil sought compensation for the damages it suffered by the taking of the leasehold. On the same date, Union Oil also filed a cross-petition in which it contended that the lot Lake Forest sought to condemn and the adjacent lot, which Union Oil owned in fee simple, should be viewed as one parcel of land, thereby entitling Union Oil to Compensation for damages to the remainder.

Through interrogatories subsequently filed by Lake Forest, it learned that Union Oil had cancelled its lease. Thereupon, Lake Forest filed a motion to dismiss Union Oil as a party and to strike the answer and cross-petition filed by Union Oil. The motion was granted by the trial court. Union oil appeals.

■■ Union Oil's first assertion on this appeal is that it is entitled to compensation for the value of the leasehold taken when Lake Forest instituted the eminent domain proceedings. It contends that its right to

compensation became vested on the date the petition to condemn was filed and that any action it took after the petition was filed is irrelevant to its right to receive compensation. We must disagree. Union Oil's lease contained a provision allowing it to cancel the lease in the event there was a taking by eminent domain. It seems only reasonable that this provision of the lease should be viewed as giving Union Oil a choice of either staying on and continuing to pay rent in order to preserve its right to share in the condemnation award, or of cancelling the lease and thereby extinguishing both its obligation to pay rent and its right to share in the condemnation award. It is absurd to maintain that Union Oil should be in the same position upon cancelling the lease as it would have been had it continued to honor it. It must be remembered that Union Oil was but a lessee, and a lessee's right to compensation consists only of its right to share in the condemnation award of its landlord. Therefore, it seems only fair that when the landlord receives no rent because the lessee has cancelled the lease, then the landlord should not be obligated to share its condemnation award with its former tenant.

■■ While there are no Illinois cases on this precise point, we find *Schreiber v. Chicago & Evanston R.R. Co.* (1885), 115 Ill. 340, 3 N.E. 427, to present an analogous situation. There, on the date the petition to condemn was filed, the property to be condemned was leased to Schreiber. Before the condemnation award could be determined, Schreiber's lease expired. The Illinois Supreme Court held that under those circumstances Schreiber was not entitled to any compensation because nothing had been taken from him. While just compensation is the fair market value of the property to be condemned on the date the petition to condemn is filed, the right of the condemnor to enter the property and the right of the condemnee to receive compensation do not vest until compensation is paid. Therefore Schreiber was not entitled to compensation because the condemnor never had the authority to oust Schreiber from his leasehold.

■■ We find Union Oil's voluntary decision to exercise its right under the terms of the lease and cancel the lease to be analogous to the natural expiration of the lease in *Schreiber.* Therefore we hold that when a lessee exercising his rights under the terms of his lease voluntarily cancels the lease between the date a petition to condemn is filed and the date the compensation award is paid, the lessee is not entitled to any portion of that condemnation award.

We are supported in our position by *Newman v. Commonwealth* (1957), 336 Mass. 444, 146 N.E.2d 485. There, the lessee held a lease on some property which was partially taken by eminent domain. Between the date the petition to condemn was filed and the date the condemnation award was paid, the lessee exercised its option under the lease and

cancelled it. The Supreme Judicial Court of Massachusetts held that the lessee was not entitled to any portion of the condemnation award, because by cancelling the lease, the lessee had relieved itself of all burdens and benefits of the lease.

Union Oil relies on *Phillips Petroleum Co. v. Bradley* (1970), 205 Kan. 242, 468 P.2d 95, to support its position that it is entitled to compensation. However, *Phillips* may be distinguished on the basis that there the condemnation award was paid before Phillips cancelled its lease.

Union Oil's second contention is that it is entitled to compensation for damages to the remainder. This remainder consists of an adjacent lot which Union Oil owns in fee. Union Oil asserts that the two lots must be considered as one parcel of land, entitling it to compensation for damages to the remainder, because on the date the petition to condemn was filed, Union Oil had a compensable interest in both lots.

■■■ Under Illinois law, "In order to recover damages in an eminent domain proceeding for property not actually taken, it must appear that this and the condemned land are contiguous, that is, they are either physically joined as a single unit or so inseparably connected in use that the taking of one will necessarily and permanently injure the other." (*City of Chicago v. Equitable Life Assurance Society of the United States* (1956), 8 Ill. 2d 341, 346, 134 N.E.2d 296, 299.) In the case at hand there are but two factors which tend to show that the two lots were a single unit. One is the fact that they are adjacent. While this factor is clearly relevant to the question of whether or not the two lots are so interrelated as to warrant their consideration as one unit, it is by no means conclusive. (*Department of Conservation v. Franzen* (1976), 43 Ill. App. 3d 374, 356 N.E.2d 1245.) The second connecting factor was the lease. However, when Union Oil cancelled the lease, it extinguished this connection. Therefore we hold that Union Oil has failed to demonstrate that the lot condemned and the lot it owns in fee simple are so interrelated as to warrant their consideration as a single parcel of land.

In the old case of *Chicago & Evanston R.R. Co. v. Dresel* (1884), 110 Ill. 89, the court allowed recovery for damage to land used as a single tract for a hothouse, where one part of the lot was owned in fee and the remainder rented. However, the case was not at all clear as to whether there was any separate determination of compensation to the "remainder." The lessee was simply allowed compensation for the damage to the whole tract and there was no mention of any apportionment as between the landlord and tenant as to the leased premises or any determination as to the compensation allowed as to the fee lands not taken. Based on logic alone, it would seem that there should not be any recovery for damage to the property not taken which Union Oil held in fee, as this would have to be allowed under the theory of

damage to the "remainder" and it seems improper to allow damage to the "remainder" when the "remainder" is under a different ownership. Moreover, if the property held in fee by Union Oil is to be regarded as a "remainder," it has to be a "remainder" by reason of the lease. After the lease was cancelled by Union Oil there was no longer anything to which the fee-owned land could be a remainder. Also, in the *Dresel* case, cited by Union Oil, there was only a *partial* taking of the leased portion, so that the leased portion not taken was still in operation, and this operation may have affected the remaining fee land. In the case at hand, the question of a "remainder" no longer exists because there is no longer an interest which can affect the remainder.

Having found the arguments raised by Union Oil to be without merit, we affirm the judgment of the circuit court of Lake County.

Judgment affirmed.

RECHENMACHER, P. J., and GUILD, J., concur.