471 So.2d 549 (1985)
DIVISION OF ADMINISTRATION, STATE of Florida DEPARTMENT OF TRANSPORTATION, Appellant,
v.
Clara E. JIRIK, aPPELLEE.
No. 84-358.
District Court of Appeal of Florida, Third District.
May 14, 1985.
Rehearing Denied June 17, 1985.
*550 Ella Jane P. Davis and A.J. Spalla, Tallahassee, for appellant.
Jeff D. Gautier and Paul E. Watson, Tavernier, for appellee.
*551 Before SCHWARTZ, C.J., and DANIEL S. PEARSON and JORGENSON, JJ.
JORGENSON, Judge.
The Division of Administration, State of Florida, Department of Transportation (DOT) appeals from a final order which determined that a taking had occurred in an inverse condemnation action.
In 1955, Jirik's parents filed a plat of Boatman's Colony, a subdivision located in Plantation Key, Monroe County, Florida, and in 1958, transferred lots 1 through 5 of block 1 to Jirik by a single warranty deed.[1] Jirik sold lot 5 approximately 18 to 20 years ago. In 1968, Jirik entered into an agreement for deed as to lot 4.
Jirik's remaining three lots form a compact body of land which is bounded on the west by lot 4, on the south by Darmy Canal, on the east by Tavernier Creek, and on the north by Freelan Road.[2],[3] The lots are presently vacant, undeveloped, and zoned for business purposes. The lots are subject to setback, maximum lot coverage, and parking restrictions pursuant to county ordinance.
In 1978, the DOT completed construction of a new bridge over Tavernier Creek and, in so doing, built a retaining wall on the right-of-way of Freelan Road. The retaining wall does not invade Jirik's lots but lies immediately to the north, running along lot 1 and part of lot 2. Access to lot 1 is now possible only by way of lot 2.
In the order under review, the trial court made the following findings and conclusions:
1. The Court cannot consider the plaintiff's three lots as one unit for inverse condemnation, as argued by the defendant, Division of Administration, Florida Department of Transportation.
2. The Court finds no diminution of access to Lots Two (2) and Three (3), of Block One (1), Boatman's Colony, Plat Book 3, page 90, of the Public Records of Monroe County, Florida.
3. The plaintiff, in the past, has considered and may continue to consider the lots involved as separate units.
4. As an incident to ownership of plaintiff's Lot One (1) abutting the public roadway, the plaintiff possesses rights not possessed by the public in general in that she has the right to egress and ingress to said Lot One (1).
5. The construction of the retaining wall, caused to be constructed by the defendant, is a substantial diminution of access to the said Lot One (1), which constitutes taking since the only access by land would be over a portion of Lot Two (2), which reduces the quality of the access to said Lot One (1).
On this appeal, the DOT contends that the trial court erred in finding that Jirik's lots constituted separate units. We disagree and affirm.[4]
*552 The determination of what constitutes a single unit/tract for condemnation purposes involves the consideration of three factors: unity of ownership, unity of use, and physical contiguity. See Mulkey v. Division of Administration, State of Florida, Department of Transportation, 448 So.2d 1062, 1065 (Fla. 2d DCA 1984); County of Volusia v. Niles, 445 So.2d 1043, 1047 (Fla. 5th DCA 1984); Di Virgilio v. State Road Department, 205 So.2d 317, 319-20 (Fla. 4th DCA 1967), cert. dismissed, 211 So.2d 556 (Fla. 1968). As between the last two factors, unity of use generally is given the greater emphasis in such determination. See Mulkey; Barnes v. North Carolina State Highway Commission, 250 N.C. 378, 384, 109 S.E.2d 219, 225 (1959); see also Baetjer v. United States, 143 F.2d 391, 395 (1st Cir.), cert. denied, 323 U.S. 772, 65 S.Ct. 131, 89 L.Ed. 618 (1944); Wilcox v. St. Paul & N.P.Ry. Co., 35 Minn. 439, 440, 29 N.W. 148, 149 (1886). Thus, "tracts physically separated from one another may constitute a `single' tract if put to an integrated use... ." Baetjer, 143 F.2d at 395; see Niles; 29A C.J.S. Eminent Domain § 140 (1965 & Supp. 1984) and cases cited in n. 25. Similarly, contiguous tracts may be considered "separate" if used separately. Mulkey; see also Sharp v. United States, 191 U.S. 341, 24 S.Ct. 114, 48 L.Ed. 211 (1903); United States v. Easements Upon 104.09 Acres of Land, 442 F. Supp. 926 (E.D.Wash. 1977); City of Menlo Park v. Artino, 151 Cal. App.2d 261, 311 P.2d 135 (Cal.Dist.Ct. App. 1957). With regard to the relationship between contiguity and use, some cases suggest that "`unity of use', or integrated use and not physical contiguity is the test but that physical contiguity often has great bearing on the question of unity of use." Calvert v. City of Denton, 375 S.W.2d 522, 527 (Tex.Civ.App. 1964); see also Baetjer, 143 F.2d at 395; Di Virgilio, 205 So.2d at 320; City of Lake Forest v. First National Bank of Lake Forest, 52 Ill. App.3d 893, 895, 368 N.E.2d 156, 158 (1977).
In Di Virgilio, the court was presented with the issue of whether the enhancement accruing to the defendants' property on the south side of a highway could be offset against the severance damage accruing to the defendants' property on the north side. To decide that issue, the court had to determine if physically separated lands could be considered "adjoining property" within the meaning of section 73.10(3), Florida Statutes (1963) (now section 73.071(4), Florida Statutes (1983)).[5] Based on its review of the record  the fact that the two tracts were separated only by a highway over which there was unlimited access and the fact that the tracts shared a highest and best use  the court concluded that the trial court did not err in permitting the jury to consider the tracts as a single unit. The court developed standards for the determination of what constitutes a single tract and stated that "[p]hysical contiguity ... [has] great evidentiary value in determining whether there exists a unity of use," 205 So.2d at 320, and, further, that contiguous lands which are nominally divided are prima facie one unit ("adjoining property") and will be treated as such "unless actually devoted to such divergent uses that they *553 take on the character of separate properties." Id. at 320.
Unlike Di Virgilio, Mulkey involved contiguous parcels of property. The northern parcel was leased to a company which constructed a convenience store on the property. The southern parcel remained vacant and unimproved except for a billboard. Patrons of the store had parked on the southern parcel but there was no indication that it was intended to be used as a parking lot. A strip of land was taken from both parcels. The taking eliminated five of the convenience store's eight parking spaces and the remaining three spaces were rendered unusable. The jury was allowed to consider the testimony of a witness who calculated severance damages based on the cost of relocating the convenience store's parking onto the vacant southern parcel. The owners of the parcels objected to this testimony because that method of calculating damages treated the leased parcel and the vacant parcel as one unit. The court applied the "three factors" test and concluded, as a matter of law, that the two parcels were not a single unit for the purposes of an award of severance damages because no unity of use existed.
In making its determination that the parcels were to be treated as separate units, the Mulkey court did not address the relationship between the contiguous nature of the parcels and unity of use. Apparently, the court considered the establishment of unity of use to be a necessary prerequisite to treating the parcels as one unit. See Mulkey, 448 So.2d at 1065 ("[the] three factors must be established to treat adjoining properties as a single tract ..." (emphasis supplied)); see also City of Menlo Park, 311 P.2d at 141; Gaines v. City of Calhoun, 42 Ga. App. 89, 93, 155 S.E. 214, 216 (1930) ("mere contiguity ... does not in itself render the lots in the aggregate an entire tract"); State v. Milanovich, 142 Mont. 410, 416, 384 P.2d 752, 756 (1963); Board of Transportation v. Martin, 296 N.C. 20, 249 S.E.2d 390 (1978). We think that, where it is established that the parcels in question are physically contiguous, a presumption arises that the parcels are one unit. However, this presumption can be rebutted by evidence that the parcels are otherwise "separate."
Legal divisions, such as those created by platting, are relevant to the determination of "separateness." See Easements Upon 104.09 Acres of Land, 442 F. Supp. at 927; State, Department of Highways v. Mouledous, 200 So.2d 384, 392 (La. Ct. App.), rev. denied, 251 La. 36, 202 So.2d 653 (1967). The courts do not agree on the proper weight to be given the existence of such divisions, at least with respect to city property. One line of cases follows Wilcox v. St. Paul & N.P. Ry. Co., in which the court stated:
"But in respect to city property, in fact unoccupied, but which appears to have been platted or divided into blocks and lots, nothing more being shown, the property should be treated as lots or blocks, intended for use as such, and not as one entire tract. Prima facie that character has been given to it by the proprietor. Presumably the division or platting was with a view to the use of the property, or to its disposal and ultimate use, in such subdivisions as has been made; and if any facts exist which might be considered sufficient to rebut this presumption, they should be disclosed."
29 N.W. at 150 (emphasis supplied). See Gaines; Pittsburgh, C., C. & St. L. Ry. Co. v. Crockett, 182 Ind. 490, 106 N.E. 875 (1914); Louisiana Ry. & Nav. Co. v. Xavier Realty, 115 La. 328, 39 So. 1 (1905); Koerper v. St. Paul & N.P.Ry. Co., 42 Minn. 340, 44 N.W. 195 (1890); New York Municipal Ry. Corp. v. Weber, 179 App. Div. 245, 166 N.Y.S. 542 (1917), modified on other grounds, 226 N.Y. 70, 123 N.E. 68 (1919); In re Queen Anne Boulevard, 77 Wash. 91, 137 P. 435 (1913).
In Oregon R. & Nav. Co. v. Taffe, 67 Or. 102, 134 P. 1024, reh'g denied, 67 Or. 102, 135 P. 332 (1913), the Wilcox rule was applied where a tract of land, laid out and platted as a town site, was located in a rural area.
*554 The Wilcox rule was specifically rejected in Monongahela West Penn Public Service Co. v. Monongahela Development Co., 101 W. Va. 165, 132 S.E. 380 (1926). Monongahela involved a tract of land that was being developed as a "suburb" of a city. The tract had been platted, the lots stakedout, the streets marked and partly graded, however, no lots had been sold at the time a right-of-way across the tract was taken. The court held that the tract had not lost its unity. The court stated:

Platting a tract into lots and streets, and staking the lots and marking the streets, show intention and preparation by the owner to subdivide his land. But such acts alone are merely tentative. Until the rights of another party intervene thereto, the owner can, by his own volition, change or destroy the plat, pull up the lot stakes, obliterate the street markings, and continue the integrity of his tract. We do not mean to imply that a lot sale or a formal dedication of the streets is necessary in all cases to break the continuity of a tract. Declarations (not repudiated), offers to sell lots (not withdrawn), and other acts (while operative) by the owner may sufficiently establish lot entity.
Id. 132 S.E. at 383 (emphasis supplied). Accord Alabama Cent. R. Co. v. Musgrove, 169 Ala. 424, 53 So. 1009 (1910); Metropolitan West Side El. R.R. v. Johnson, 159 Ill. 434, 42 N.E. 871 (1896); Cox v. Mason City & Ft. D.R. Co., 77 Iowa 20, 41 N.W. 475 (1889); Mouledous; Public Water Supply District No. 2, of Jackson County v. Alex Bascom Co., 370 S.W.2d 281 (Mo. 1963), criticizing School District of Kansas City v. Phoenix Land & Improvement Co., 297 Mo. 332, 249 S.W. 51 (1923) (invoking a Wilcox-type rule); Barnes.
Other factors relevant to a determination of unity of use, or the lack thereof, include: (1) the intent of the owner, City of Menlo Park, 311 P.2d at 141; Mouledous, 200 So.2d at 392 ("The question of whether a landowner's holding constitutes a single tract ... is a practical question to be decided on the peculiar facts presented in [the] case. The court should consider evidence ... [of such facts as] ... the intent of the owner. ..." (emphasis supplied)); Milanovich, 384 P.2d at 756; In re Queen Anne Boulevard, 137 P. at 440-41; (2) the adaptability of the property, Gaines, 155 S.E. at 217; cf. Barnes, 109 S.E.2d at 225 ("the mere possibility of adaptability to different uses will not render segments of land separate and independent" (emphasis supplied)); (3) the dependence between parcels, County of Maricopa v. Paysnoe, 83 Ariz. 236, 239, 319 P.2d 995, 997 (1957); Arkansas State Highway Commission v. Poteete, 245 Ark. 430, 432 S.W.2d 774, 775-76 (1968); (4) the "highest and best use" of the property,[6]United States v. 105.40 Acres of Land, etc., Porter County Ind., 471 F.2d 207 (7th Cir.1972); County of Maricopa; Di Virgilio; Calvert; (5) zoning, Easements Upon 104.09 Acres of Land; County of Maricopa;[7] (6) the appearance of the land, Easements Upon 104.09 Acres of Land, 442 F. Supp. at 927; Mouledous, 200 So.2d at 392; as well as (7) the actual use of the land, see, e.g., Arkansas State Highway Commission v. Taylor, *555 238 Ark. 278, ___, 381 S.W.2d 438, 440 (1964);[8]City & County of Honolulu v. Bonded Investment Co., 54 Hawaii 523, 54 Hawaii 547, 511 P.2d 163 (1973); Sheldon v. Minneapolis & St. Louis Ry. Co., 29 Minn. 318, 13 N.W. 134 (1882) ("[respondent's] land being a compact body, used and occupied as entirety [(as a farm)] constituted only one tract, notwithstanding its division into lots by the imaginary lines of the survey and plat ...," 13 N.W. at 135), overruled on other grounds, State v. McAndrews, 286 Minn. 115, 116, 175 N.W.2d 492, 493 (1970); and (8) "the possibility of [tracts] being ... combined in use `in the reasonably near future.'" Baetjer, 143 F.2d at 395 (quoting United States ex. rel. Tennessee Valley Authority v. Powelson, 319 U.S. 266, 276, 63 S.Ct. 1047, 1053, 87 L.Ed. 1390 (1943)); Taylor, 381 S.W.2d at 440; but see, e.g., Barnes, 109 S.E.2d at 225 ("The unifying use must be a present use. A mere intended use cannot be given effect.").
We believe the Wilcox rule is the better rule and hold that it is applicable to the facts of this case which involve an "established" subdivision.[9] Under the Wilcox rule, Jirik's lots are presumptively separate units. The DOT failed to present any evidence which could rebut this presumption. There was no evidence that, prior to construction of the new bridge and retaining wall, Jirik's lots were dependent on each other or necessarily would have been sold in a group, see Poteete (finding lots dependent and necessarily would be sold in three-lot tiers and two-lot units; distinguishing Taylor on that basis), were used, or were to be used, together,[10]see, e.g., Taylor, 381 S.W.2d at 440[11] or that the value of any of the lots was dependent on its relationship with one or both of the other lots.[12]See County of Maricopa;[13]Gaines.[14]
*556 The order of the trial court is accordingly affirmed.[15],[16]
DANIEL S. PEARSON, J., concurs.
SCHWARTZ, Chief Judge (dissenting).
Because the sole effect of the DOT construction was to restrict access to Lot 1 from Freelan Road only through Lot 2, I would reverse on the well-established principle that a taking does not occur merely because an owner's rights of access are curtailed, even severely so, so long as they are not entirely destroyed. Weir v. Palm Beach County, 85 So.2d 865 (Fla. 1956); City of Port St. Lucie v. Parks, 452 So.2d 1089 (Fla. 4th DCA 1984), pet. for review denied, 459 So.2d 1041 (Fla. 1984).
I cannot agree that this rule may be circumvented by treating Lot 1 as separate from Lots 2 and 3. Essentially the only factor which differentiates the three lots, which are of course commonly owned by the appellee, is the fact that they have been described on a map of a platted subdivision submitted by her predecessor in title almost 30 years ago. Even applying the authorities cited in Judge Jorgenson's admirably comprehensive opinion  notwithstanding that most of them concern the significantly different issue of severance damages rather than inverse condemnation  it seems clear that this is not enough.
The cases indicate, as the court acknowledges, that the manner in which the property is actually or projected to be used is, at least, the most important factor in resolving the issue; at most, a separate use is indispensable to a determination of separability.[1] See Mulkey v. Division of Administration, *557 State of Florida, 448 So.2d 1062, 1065 (Fla. 2d DCA 1984). In this case, none of these entirely unimproved lots have ever been used, either singularly or collectively, for anything. The only thing actually done with the property is to offer it for sale. In this regard, it is crucial that, after the bridge and retaining wall were erected, Mrs. Jirik received a very substantial $125,000.00 offer for all three lots which was rejected only because she considered it too low. In my view, this fact, which is the only economically meaningful one in the record which bears upon the present issue, conclusively demonstrates that the entire tract is considered by those who deal with it in the real world as a single entity; that the appellee has not therefore been deprived of the beneficial use of Lot 1, considered as a part of that entity, as is required to justify an inverse condemnation, 21 Fla.Jur.2d Eminent Domain § 162 (1980), and cases collected, and that the sole result of the division effected below is to permit the appellee to realize more money than if her holdings were considered together. I do not believe that this can be justified under the Florida law of eminent domain. I would reverse the judgment under review.

*558 APPENDIX A

*559 
NOTES
[1] A fact stipulation admitted into evidence provided:

* * * * * *
2. Despite the appearance of Freelan Jones' name on Exhibit A [an accurate copy of the plat of record for Boatman's Colony, page 90, Plat Book 3, Public Records of Monroe County, Florida] as owner, Freelan Jones was Plaintiff Clara Jirik's father and he handled the development and sales only as a matter of convenience for Plaintiff Jirik.
[2] The indicated directions are only approximations.
[3] Freelan Road, undoubtedly named for Freelan Jones, Jirik's father, was dedicated to the public as part of the development plan.
[4] Because we conclude that Jirik's lots are properly considered as separate units, it follows that access to lot 1 was totally destroyed by the actions of the DOT and that a taking had resulted. This case is thus distinguishable from Weir v. Palm Beach County, 85 So.2d 865 (Fla. 1956), where the landowner's access rights were merely "regulated." See Florida State Turnpike Authority v. Anhoco Corp., 116 So.2d 8, 14 (Fla. 1959) (distinguishing Weir on that basis). Weir appears to have been modified by the supreme court's decision in State, Department of Transportation v. Stubbs, 285 So.2d 1 (Fla. 1973) (court referred to a judicial liberalization of the concept of property in condemnation actions in holding damages recoverable for a substantial diminution in access). See Pinellas County v. Austin, 323 So.2d 6 (Fla. 2d DCA 1975) (although vacation of street did not totally destroy access since small wooden bridge remained, access sufficiently impaired to permit award of damages; fact that other means of access exist may reduce the amount of recovery); cf. City of Port St. Lucie v. Parks, 452 So.2d 1089 (Fla. 4th DCA) (no inverse condemnation resulted where owners merely lost the most convenient access to their property), rev. denied, 459 So.2d 1041 (Fla. 1984).
[5] Section 73.071(4), Florida Statutes (1983), provides:

73.071 Jury trial; compensation; severance damages. 
(4) When the action is by the Division of Road Operations, county, municipality, board, district or other public body for the condemnation of a road, canal, levee or water control facility right-of-way, the enhancement, if any, in value of the remaining adjoining property of the defendant property owner by reason of the construction or improvement made or contemplated by the petitioner, shall be offset against the damage, if any, resulting to such remaining adjoining property of the defendant property owner by reason of the construction or improvement, but such enhancement in the value shall not be offset against the value of the property appropriated, and if such enhancement in value shall exceed the damage, if any, to the remaining adjoining property there shall be no recovery over against such property owner for such excess.
[6] The court in Easements Upon 104.09 Acres of Land held that evidence of the highest and best use of land is not to be considered during the "separateness" determination; it is to be considered only for the purpose of establishing market value. The court stated that decisions which hold otherwise, such as 105.40 Acres of Land, etc., Porter County, Ind., "are based upon an unfortunate mingling of existing legal principles." 442 F. Supp. at 928.
[7] In County of Maricopa, involving facts nearly identical to those in Mulkey, the court stated, "[a]ssuming without deciding that these lots were at the time of taking devoted to the same use, we are still not convinced that they are to be arbitrarily treated as a single unit in determining ... severance damages." 319 P.2d at 996. The court, noting that the two lots were both zoned commercial and that each had a value as a lot for commercial purposes independent of the other, determined that their highest and best use was for separate commercial purposes and that the lots should be valued on that basis in order to afford the owners "just compensation." Id. at 997.
[8] Taylor involved the development of a subdivision near a city's limits. A plat was filed, streets were laid out and improved, most utilities were installed and a number of lots were sold before a strip of land was appropriated from the development tract. The court held that it was error for the lower court to rule that all the lots constituted a unit of value. The court pointed to the lack of testimony in the record showing that any one of the lots was used or was to be used in connection with any other lot. 381 S.W.2d at 440.
[9] The record reflects that the plat was recorded, lots were sold and at least one road (Freelan Road) was dedicated to the public. Thus, this case is distinguishable from the following subdivision cases in which courts found the acts of development to be insufficient to break tract unity; Alabama Cent. R. Co. (platting only); Mouledous (platting, dedication of streets, but no lots sold); Barnes (maps made after taking, no dedication of streets, no lots sold); Monongahela (lots platted and staked out, streets marked and partly graded, but no lots sold and no evidence that streets dedicated or plat recorded).
[10] Jirik's lots were being used, to the extent they could be so considered, as lots held for sale. That this is a "substantial" use can not be doubted. See generally The Florida Uniform Land Sales Practices Law, ch. 498, Fla. Stat. (1983) (providing that: "disposition of any interest in subdivided lands has a vital impact on Florida's economy and that such land sales constitute a major industry within this state, employing many citizens, attracting thousands of visitors and new residents, and contributing countless dollars to the total annual gross income of the state," see § 498.003, Fla. Stat. (1983)).
[11] See supra n. 8.
[12] Jirik testified in her deposition that, prior to the building of the new bridge and retaining wall, she received an offer to purchase lot 1 for $125,000, which she rejected because of tax implications. After the construction was completed, Jirik received an offer of $125,000 for all three lots, which she refused as being inadequate. The following colloquy took place during her deposition:

Q. Have you offered any of these lots, individually or jointly or separately for sale since the construction of the bridge?
A. I do not know how to put it. We could not possibly offer them separately, because if we sold lot 1, the only way to get to lot 2, if we sold lot 3, there would be no roadway to get into lot 1 and to half of lot 2, so that was when we said we had better not sell anything, we better do something about our property.
[13] See supra n. 7.
[14] In Gaines, a case similar to the instant one in that it concerned both the "separateness" issue and lot access, the plaintiff owned sixteen vacant building lots, all abutting upon a street. The city had raised the grading of the street along eight lots. The plaintiff sought damages for each of her eight lots affected by the grade change measured on the basis that each lot constituted a separate unit. The court held:

[W]here a tract of land has been platted and subdivided into building lots, each of which is separately adaptable to building purposes and has a value for such purposes separate and distinct from its value as a constituent part of the entire tract, and it does not appear that the entire tract consisting of the lots in the aggregate is, in its entirety, being put to any use to which it is peculiarly adaptable as an entire tract, or that it possesses any peculiar adaptability for use as an entire tract, although all the lots are vacant and unimproved, prima facie each individual lot is, for the purpose of assessing damages thereto ... a separate and distinct tract of land... .
155 S.E. at 216 (emphasis supplied).
[15] This result is compelled by the requirements of article I, section 9, and article X, section 6, of the Florida constitution and of the fourteenth amendment of the Constitution of the United States that "just compensation" be rendered. We note:

It is often difficult, when part of a tract is taken, to determine what is a distinct and independent tract; but the character of the holding, and the distinction between the residue of a tract whose integrity is destroyed by the taking, and what are merely other parcels or holdings of the same owner, must be kept in mind in the practical application of the requirement to render just compensation for property taken for public uses. How it is applied must largely depend upon the facts of the particular case, and the sound discretion of the court.
Sharp v. United States, 191 U.S. 341, 354, 24 S.Ct. 114, 117, 48 L.Ed. 211 (1903) (emphasis supplied) (quoting with approval the opinion of the circuit court, 112 F. 893, 896 (3d.Cir.1902)).
[16] In response to the dissent, we note that the fact that Jirik received a post -construction offer for the three lots does not demonstrate anything with regard to whether her lots were separate units before construction began; as Jirik testified, after construction, she could no longer sell her lots as three separate units because access to lot 1 was destroyed by the DOT's actions. See supra n. 12. There is no evidence indicating that, prior to construction, Jirik's lots were considered to be a single entity. Indeed, all the evidence is to the contrary  in addition to the fact of platting, Jirik sold lots 4 and 5 separately and received a pre -construction offer of $125,000 for lot 1.
[1] I confess myself hard-pressed to follow the rapid shifting of "presumptions"  in which the bubble bursts and then miraculously reconstitutes itself  in the majority's opinion from the presumption that physically contiguous parcels constitute a single unit to the contrary presumption that they are separate (thereby rebutting the previous presumption?) when they are platted as such. I do not believe that the latter "presumption," which the court apparently concludes is both operative and unrebutted, is justified as a matter of fact or law. As this case illustrates, the mere drawing of lines on an ancient and unused document cannot, without more, be sufficient to establish anything with regard to the ultimate issue upon which the determination of separability depends: the actual and potential use of the property in question.