442 So.2d 221 (1983)
Maurice FOX, Appellant/Cross-Appellee,
v.
TREASURE COAST REGIONAL PLANNING COUNCIL, Appellee/Cross-Appellant,
v.
FLORIDA LAND AND WATER ADJUDICATORY COMMISSION, Appellee/Cross-Appellee.
Nos. VV-338, WW-339.
District Court of Appeal of Florida, First District.
March 22, 1983.
Rehearing Denied and Clarification Granted November 21, 1983.
*222 Parker D. Thomson, Richard J. Ovelmen and Douglas M. Halsey of Paul & Thomson, Miami, and Jon C. Moyle of Moyle, Jones & Flanigan, West Palm Beach, for appellant/cross-appellee.
Roger G. Saberson, Delray Beach, for appellee/cross-appellant.
Jim Smith, Atty. Gen., Tom Tedcastle, Asst. Atty. Gen., and Nancy G. Linnan, Asst. Deputy, for appellee/cross-appellee.
BOOTH, Judge.
These consolidated cases are before us on appeal and cross-appeal from a final order of the Florida Land and Water Adjudicatory Commission (Commission) involving a development order for a Development of Regional Impact ("DRI") issued by the Palm Beach County Board of County Commissioners (Palm Beach County) in September, 1974. The owner/developer (Fox) and the Treasure Coast Regional Planning Council (Planning Council) were unable to arrive at a development proposal that would both satisfy environmental concerns in preserving the wetland portions of the property and permit development in a manner satisfactory to the owner/developer. Fox has appealed, and the Planning Council has cross-appealed, the order below.
Fox seeks to develop his 1,704-acre tract as a retirement community containing 10,004 living units, with a population cap of 18,416 persons. In his proposed development, dwelling units would be dispersed in 45 residential pods, some bordering on a lake, others on a golf course. The buildings would be single and mixed-story clusters, with a maximum rise of four stories. Two golf courses are proposed, as well as a 406-acre recreational lake, bicycle paths, tennis courts, and swimming pools. The most significant feature of the development is a proposed center for geriatric medicine, which would include a medical clinic with emergency facilities and rehabilitation services, a retirement hotel for disabled persons, a nursing home, and continuing education facilities to provide training for the staff of the center. The development proposal contemplates that the geriatric center will be owned and operated for public benefit by a non-profit corporation, and that land and $2,000,000 "seed" money will be donated by Fox for the center.
The property in question is bounded on the east by the West Palm Beach Water Catchment Area and is inundated during the wet season. Development in any manner will require drainage. Fox's development proposal would allow development of essentially all 1,705 acres of the property, except for 14.5 acres of "natural areas."
The alternate proposal developed by the Planning Council would confine development to the upland and low-value wetland portions of the property, approximately 654 acres, while prohibiting development on the remaining 1,051 acres of the tract, designated as "moderate" and "high value" wetlands. This would preserve the wetland areas with the highest environmental and *223 ecological values, minimizing the negative environmental impact of the development.
In an attempt to equitably resolve the dispute, the Commission fashioned a compromise by affirming the development order issued by Palm Beach County, allowing development subject to several conditions imposed by the Commission, including various conditions relating to the geriatric center and a requirement that Fox preserve approximately 20 percent of the property in its natural state. The plan adopted by the Commission would require preservation of 338 acres of "high quality" wetlands located adjacent to the West Palm Beach Water Catchment Area.
The compromise plan adopted by the Commission was not one of the alternatives presented to, or considered by, the hearing officer. Both Fox and the Planning Council argue that there is insufficient evidence in the record to support the final order of the Commission. We agree and remand the cause to the Commission for further proceedings.[1] In view of the lengthy and confused history of this dispute, however, some guidelines to the remand are appropriate.
Section 380.07, Florida Statutes, provides for the creation of the Florida Land and Water Adjudicatory Commission to hear appeals of development orders issued by local governments for developments classified as having a regional impact ("DRI"). The statute provides that the Commission shall, after a hearing, issue a decision either granting or denying permission to develop and that the Commission may attach conditions and restrictions to its decision. Section 380.08(3), Florida Statutes requires that a governmental agency denying a development permit specify its reasons in writing and state the changes, if any, that would make the proposed development eligible to receive the permit. Under Section 380.08(1), Florida Statutes, the governmental agency may not issue an order that is unduly restrictive or that constitutes a taking of property without the payment of full compensation.
In prior proceedings, beginning in 1974, Fox obtained Palm Beach County's approval of the proposed development, the property was rezoned, and a development order issued. The Planning Council appealed to the Commission, and after litigation as to the timeliness of that appeal,[2] the matter was presented to the hearing officer for a de novo hearing. In his recommended order of November 20, 1978, the hearing officer found that the proposed development would have an unfavorable impact upon the environment and natural resources of the area and that this negative environmental impact would override the positive value of the proposed development.[3] Accordingly, the hearing officer recommended that the development order issued by Palm Beach County, allowing the development as proposed by Fox, be set aside.
The Commission considered the recommended order and remanded the case to the hearing officer for further hearings to determine what changes in the development proposal would make the proposal eligible to receive the permit, in conformance with Section 380.08(3), Florida Statutes.[4]
*224 At the hearing on remand, the Planning Council proposed the plan previously described, preserving the moderate and highvalue wetland areas of the property in their natural state, some 1,051 acres, and allowing development of 654 acres of upland and low-value wetland areas located in the south and west portions of the tract. The Planning Council presented, as an example of a possible use of the 654 acres suitable for development, an "alternate site plan" that included many of the attributes of the original development proposal and maintained approximately the same number of residential units as would have been included in the original proposal, but concentrated them in mid-rise structures averaging six to eight stories. In addition, the Planning Council presented another possible site plan that included the type of amenities provided in the original proposal, but reduced the number of residential units in proportion to the reduced land area available for development. The Planning Council also presented some evidence that the area suitable for development could be used for low-density residential estate-tract uses, including parcels ranging in size from one to five acres.
Shortly after the hearing on remand, this Court handed down its decision in Estuary Properties, Inc. v. Askew, 381 So.2d 1126 (Fla. 1st DCA 1979). Since the Estuary Properties decision involved substantially similar issues, the hearing officer directed the parties file legal memoranda regarding that decision. After consideration of the legal memoranda on this Court's Estuary Properties decision and in reliance on that decision, the hearing officer entered his Supplemental Findings of Fact, Conclusions of Law and Recommended Order, in part as follows:
If development of the Fox Property were confined to the 654 acres identified as upland and low-value wetland, the remainder of the property which displays high or moderate wetland values could continue to function as a viable wetland, offering the wetland attributes set out in the original Recommended Order, and continuing to provide significant wildlife habitat for many species, including those endangered and threatened species identified in the original Recommended Order.
... .
While the alternate site plan would accomplish the valid objective of preserving the wetland attributes of the Fox Property, it does not constitute a practical or feasible change in the application for development approval which would render the proposal eligible for a permit. The alternate site plan is neither financeable nor marketable. If the Respondent is limited to the upland and low-value wetland areas of his property for development purposes, a retirement community of remotely the proposed magnitude would not be feasible. The evidence does not reveal any changes in the application for development approval which would accomodate both the essential attributes of the proposal and the preservation of wetland areas.
There are alternatives to a complete retirement community which could be developed at the Fox Property consistent with the goal of preserving the wetlands. Large estate tracts were suggested by two witnesses. Even in connection with these alternatives, however, development would need to be confined to the upland and low-value wetland areas, leaving the wetland areas to serve only as a visual and limited recreational amenity.
... .
The alternate site plan proposed by T.C.R.P.C. would be a change in the proposed project that would preserve the wetland attributes of the Fox Property. Since, however, the ultimate site plan is neither marketable nor financeable, it does not constitute a change which is viable. It does not appear from the evidence that there are any viable changes to the application for development approval which could be made so *225 as to preserve the wetland attributes of the property.

... .
The evidence in this case does not reveal any changes that can accomodate the goal of preserving the wetland areas of the Fox Property with a retirement community of remotely the proposed magnitude. Governmental action prohibiting the development of a large retirement community on the property would not necessarily be unduly restrictive, nor would it necessarily constitute a taking of the property in a constitutional sense.
... .
On December 17, 1979, the First District Court of Appeal filed its decision in Estuary Properties, Inc. v. Askew, [381 So.2d 1126] (Case No. II-419). The facts of the case are directly analogous to the facts of the instant matter, and the Court's decision mandates that the Development Order issued by the Board of County Commissioners of Palm Beach County be affirmed, contrary to the recommendation set forth in the Recommended Order entered November 20, 1978.
... .
In the instant matter, just as in Estuary Properties, the justification for denial of the application for development approval is preservation of a significant and valuable wetland environment. Just as in Estuary Properties, the wetland environment on the Fox Property is important to surrounding properties and to the region as a whole. Just as in Estuary Properties, the developer in this case is faced with governmental action that would limit his use of a portion of the property for a valuable public purpose. The Estuary Properties case and this matter are not logically distinguishable. The Court in Estuary Properties concluded that since denial of the application for development approval would constitute a "taking," approval of the application was then mandated absent initiation of condemnation proceedings. (emphasis added)
Based on the foregoing findings of fact and conclusions of law, the hearing officer recommended that the Fox development, as originally proposed, be allowed and that the development order of the County be affirmed.
The Recommended Order indicates that the hearing officer interpreted Section 380.08(3), Florida Statutes, to require that changes specified under the statute leave essentially intact the development as originally proposed. However, the changes in the development proposal that make the development eligible to receive a permit need not preserve intact the "essential attributes" of the original development proposal, as long as the owner retains some reasonable, viable use of his property. Based on his finding that no alternative development proposal existed which would preserve both the wetlands and the essential attributes of the proposed development, and relying on this court's opinion in Estuary Properties, supra, the hearing officer concluded that the development as originally proposed must be permitted or compensation paid for a taking of private property. Under the most recent decisions of the Florida Supreme Court, however, the focus is on the nature and extent of the interference with the landowner's rights in the parcel as a whole in determining whether a taking of private property has occurred. Prohibition of development on certain portions of the tract does not in itself effect an unconstitutional taking.[5]
This court's decision in Estuary Properties, Inc. v. Askew, supra, relied on by the hearing officer, was reversed in pertinent part by the Florida Supreme *226 Court in Graham v. Estuary Properties, Inc., 399 So.2d 1374 (Fla. 1981). At the time the hearing officer made his determinations, he did not have the benefit of the Florida Supreme Court's Estuary Properties decision, supra, which holds that the State can, through regulation, require a landowner to preserve endangered wetlands and can deny a landowner any developmental use of a portion of his property without compensation, so long as the tract as a whole retains a viable economic use. In Graham v. Estuary Properties, supra, the Florida Supreme Court held that Chapter 380 requires a balancing of the State's interest in protecting the health, safety, and welfare of the public against the constitutionally protected private property interests of the landowner and that "the owner of private property is not entitled to the highest and best use of his property if that use will create a public harm."[6]
In the instant case, once the Planning Council had proven that an adverse environmental impact would result from the development as originally proposed, had presented evidence of a change in the development proposal that would protect the identified environmental values of the site (by indicating where on the tract development could be located), and had made a prima facie showing that such a change would not unduly restrict Fox's use of his property or constitute a taking of his property without full compensation (by showing that there remains some economically reasonable use of the property as a whole), the Planning Council was not required to present a specific alternate development proposal to accommodate the desires or expectations of the landowner. Under the law as stated by the Florida Supreme Court, a taking will not be established merely because the agency denies a permit for the particular use that a property owner considers to be the most desirable or profitable use of the property, or because the agency totally denies use of some portion of the property. Estuary Properties and Key Haven, supra.
In the instant case, the recommended order on remand presented the Commission with two basic choices: (1) deny the development permit, with written reasons for denial and statement of any changes in the development proposal, supported by evidence of record, that would make the proposal eligible to receive a permit; or (2) grant the development permit, subject to any Commission-imposed conditions or restrictions meeting Chapter 380 requirements and supported by evidence of record.
Given a final order of the Commission, either denying or granting the permit with conditions and restrictions, Fox would then have a number of options: (1) conform his development to the conditions prescribed by the Commission, (2) present to Palm Beach County an alternate development proposal within the guidelines given him by the Commission, (3) seek review in circuit court of the Commission's order, pursuant to Section 380.085, Florida Statutes, alleging that the Commission's action was an unreasonable exercise of the State's police power, or (4) seek review of the Commission's order, in accordance with Chapter 120, Florida Statutes, for the purpose of determining whether the order was in accordance with existing statutes or rules and based on competent substantial evidence. See, Key Haven, supra.
In the instant case, after a final hearing at which the Commission heard arguments from the parties as well as comment by interested groups and individuals, the Commission decided to accept the hearing officer's findings of fact and to grant Fox's development permit, but subject to several conditions imposed by the Commission, including the requirement that Fox preserve 338 acres of his property in its natural state. There has been no finding, however, that the Commission's plan would adequately preserve the wetland attributes of the Fox property so as to avoid the *227 unfavorable impact of the development on the environment and natural resources of the region. Neither has there been a finding that the Commission's plan is a reasonable restriction on the developer's use of his land and not a taking of property in violation of Section 380.08(1), Florida Statutes. The record as developed before the hearing officer does not contain evidence to support either finding, since the compromise plan was first proposed at the final hearing before the Commission, which did not remand the cause to the hearing officer for the appropriate findings of fact to support its order. The fact that the Commission plan falls somewhere between the proposal presented by Fox and the proposal presented by the Planning Council does not of itself demonstrate that the Commission's plan is an equitable substitute that meets the requirements of Chapter 380. The cause must accordingly be remanded to the Commission for further proceedings.
The case presented here involves both policy decisions and questions of fact, the latter requiring technical input. We recognize the discretion given the Commission under Sections 380.06 and .07, Florida Statutes, to make policy decisions that implement the legislative purposes outlined in Section 380.021, Florida Statutes. However, when fact-finding functions have been delegated to a hearing officer, the Commission must rely in its determinations upon the record developed before the hearing officer. We do not hold that the Commission may not itself formulate a compromise solution that will provide a balance between the public and private interests involved, so long as the record establishes that the compromise complies with the requirements of Chapter 380, Florida Statutes. Failing that, however, remand to the hearing officer is required.
This cause is accordingly remanded to the Commission with directions for remand to the hearing officer. The Commission shall direct the hearing officer to reconsider the evidence before him, including the Planning Council's proposal, in light of the Florida Supreme Court's decisions in Estuary Properties and Key Haven, supra. If the Commission chooses to give further consideration to its own compromise plan for development of the property, the Commission shall also direct the hearing officer to make findings of fact, including taking any additional evidence necessary, with respect to that plan's compliance with the requirements of Chapter 380. We do not intend by this direction on remand to limit or preclude any other proposals or compromises which the parties may wish to present to the hearing officer.
We find without merit appellant's assertion that Section 380.07(4), Florida Statutes, is an unconstitutional delegation of power to the Commission allowing a standardless review of local government DRI development orders. See, Graham v. Estuary Properties, Inc., 399 So.2d at 1378. In view of the options available to the Commission and to the parties before it, however, we find it unnecessary to address at this time the other issues raised on appeal, which may be resolved by the parties on remand.
ERVIN and THOMPSON, JJ., concur.

ON REHEARING AND CLARIFICATION
PER CURIAM.
Motions for rehearing filed by appellant/cross-appellee Fox and appellee/cross-appellant Treasure Coast Regional Planning Council are denied. Motion of appellant/cross-appellee Fox for clarification is granted for the purpose of stating that the list of options available to the landowner on issuance of a final order by the Commission, page nine of opinion, is not an exclusive list.
ERVIN, C.J., and BOOTH and THOMPSON, JJ., concur.
NOTES
[1] In its brief, the Commission acknowledges that remand is appropriate if the evidence is insufficient to support its order:

Should this Court find that the record is insufficient to support the order of the Governor and Cabinet as the evidence introduced largely addressed the wetlands as a whole rather than the particular 338 acres preserved under the Florida Land and Water Adjudicatory Commission Order, a remand for further evidence would be appropriate. Such a remand would permit the interests of the State of Florida to be represented rather than just the individual interests of the developer and Treasure Coast Regional Planning Council.
[2] Fox v. South Florida Regional Planning Council, 327 So.2d 56 (Fla. 1st DCA 1976), cert. denied, 336 So.2d 1181 (Fla. 1976).
[3] Whether less ambitious development could be undertaken on the property without damaging the wildlife habitat or the wetland values was not addressed in the initial hearing.
[4] Section 380.08(3), Florida Statutes:

(3) If any governmental agency denies a development permit under this chapter, it shall specify its reasons in writing and indicate any changes in the development proposal that would make it eligible to receive the permit.
[5] See, Graham v. Estuary Properties, Inc., 399 So.2d 1374 (Fla. 1981); Key Haven Associated Enterprises, Inc. v. Board of Trustees of the Internal Improvement Trust Fund, 427 So.2d 153 (Fla. 1982). See also, Penn Central Transportation Company v. City of New York, 438 U.S. 104, 57 L.Ed.2d 631, 98 S.Ct. 2646, rehearing denied, 439 U.S. 883, 99 S.Ct. 226, 58 L.Ed.2d 198 (1978).
[6] Graham v. Estuary Properties, 399 So.2d at 1382. See also, Key Haven Associated Enterprises, supra.