PER CURIAM.
This is an appeal by Coscan Florida, Inc. of a final order issued by the Florida Land and Water Adjudicatory Commission (FLWAC) denying Coscan’s application for a development of regional impact (DRI). Two issues are presented by Coscan for review by this court: (1) Whether the hearing officer and FLWAC failed to apply the statutory criteria required by section 380.-06(14), Florida Statutes (1987); and (2) whether FLWAC fulfilled its statutory obligation to advise Coscan what changes to the proposal would result in approval. Additionally, a supplemental issue was presented by FLWAC in a brief permitted by order of this court. Coscan made Metropolitan Dade County a party to the action but not FLWAC, and FLWAC contends it should be allowed to appear as a party. We affirm on all issues.
Coscan (formerly Costain) sought permits from the Department of Environmental Regulation (DER) and the Florida Water Land and Adjudicatory Commission (FLWAC) for expansion of a marina in Dade County. Metropolitan Dade County opposed the project and the matters were consolidated following a formal administrative hearing below. An officer of the Division of Administrative Hearings (DOAH) issued two recommended orders, one for each agency. The application for a dredge and fill permit from DER was approved. Subsequently, FLWAC issued a final order which denied a DRI, that order being the basis of this appeal.
The development owned by Coscan is located at the northern border of Dade County. Coscan wants to expand an existing marina known as the Waterways from 99 slips to 346 slips. Proposed expansion *82 would add four main piers having a total length of 2,565 feet, 71 finger piers in the marina basin, 31 piers in the entrance channel to the basin, and 48 marginal docks in the existing canal just to the north of the basin.
The Dade County Comprehensive Development Master Plan Land Use Map designates the Waterways site for medium to high-density residential use, but does not designate uses for water bodies. The current zoning designation is for multi-family use, and there is also a zoning designation of business use in the southwest corner of the Waterways parcel. Portions of Dade County have their land uses regulated not only by the Dade County Master Plan, but also by area or neighborhood studies which are ancillary to the master plan. This site is encompassed by the Ojus-Northeast Dade Area Study. The Ojus area plan did not approve the area for large-scale commercial marina use at the Waterways, but only approved on site boating facilities for residents in the surrounding upland residential development. There are 99 perimeter slips currently permitted, as this number falls below the threshold for development of regional impact and because of the vested rights the developer had obtained. Proposed marina facilities would include a shopping center, a recreational parcel, a spa, and multifamily residential units.
A large open basin in the Waterways development provides a central focus for the current residents of this water-oriented community. Current residents living on the basin paid a premium on the purchase price for frontage on this basin. They were not made aware that the developer intended to convert that basin into a large commercial marina which would contain 2,565 linear feet of concrete docks and four piers plus some 350 piles. Information about the expansion was made available only to those who specifically inquired. The Broward County neighborhood immediately abutting Coscan’s northern canal is a luxury single-family waterfront neighborhood with a high degree of security and privacy.
Section 380.06(14), Florida Statutes (1987), requires the reviewing authority, FLWAC, to consider whether, and the extent to which:
(a) The development unreasonably interferes with the achievement of the objectives of an adopted state land development plan applicable to the area;
(b) The development is consistent with the local comprehensive plan and local land development regulations; and
(c) The development is consistent with the report and recommendations of the regional planning agency submitted pursuant to subsection (12).
§ 380.06(14), Fla.Stat. (1987).
Because there is no evidence that the proposed development unreasonably interferes with the objectives of the state land development plan, the criteria in section 380.06(14)(a), Florida Statutes (1987), are not applicable, but subparagraphs (b) and (c) are applicable.. The statute, of course, directs the reviewing authority to look to the local comprehensive plan; therefore, the Dade County Comprehensive Development Master Plan is, in actuality, the controlling guideline for the issues in this case.
The applicant applied for a permit under § 33-311(d) of the Dade County plan. This section is entitled “Special Exceptions, Unusual and New Uses”. The relevant requirements of that section are that the development not result in excessive noise or traffic, that it not create a fire or other equally or greater dangerous hazard, not provoke excessive overcrowding or concentration of people, when considering the necessity for and reasonableness of the applied-for exception or use in relation to the present and future development of the area concerned, and the compatibility of the applied-for exception or use with such area and its development. The focus of the hearing and of this section was on the compatibility aspect of the requirements. This section also requires that a proposed development not destroy the character of the neighborhood in which it would be located. See Board of County Comm’rs of Metro Dade County v. Lowos, 348 So.2d 13 *83 (Fla. 3d DCA 1977), cert. denied, 358 So.2d 128 (Fla.1978).
The hearing officer made nearly 100 findings of fact and many conclusions of law which were reviewed and adopted by FLWAC. We find competent substantial evidence to support the findings that the proposed expansion of the marina would conflict with the normal and expected use of the existing neighborhood. See Grafkowicz v. Metro. Dade County, 389 So.2d 1041 (Fla. 3rd DCA 1980); and Machado v. Musgrove, 519 So.2d 629 (Fla. 3rd DCA 1987), rev. denied, 529 So.2d 694 (1986).
The hearing officer found that the proposed use was too intensive to be compatible with existing residential use of the surrounding areas. The Ojus-Northeast Dade Area Study, which is a neighborhood plan, supports the contention that the size of the marina is out of scale with the residential development. Furthermore, the Biscayne Bay Management Plan, another area study ancillary to the Dade County Master Plan, indicates that the development is incompatible with the adjacent residential property. The focus of these plans is on the consistency with surrounding areas. The main factors which apparently convinced the hearing officer that the development permit should be denied was the threat to the preservation, safety, peace and privacy that the development would present due to its scale, the parking need for nonresidents, the pedestrian traffic, the extended hours of outdoor activity, and the noise.
The hearing officer found that the location of the marina facilities next to the residential areas would be inconsistent with the normal expected use of the existing residential property. Additionally, he found that the proximity of boats which are in the marina creates the potential for fire hazards from a cause such as a gasoline explosion. The great length of the piers in the main basin could cause people to be trapped on the pier. There is also a problem with lack of access for emergency ve-hides for the basin because the promenade along the perimeter of the basin does not allow direct vehicle access. The area required for a large rescue and emergency vehicle to turn around would not be provided along some of the access areas to the marina. The hearing officer found the proposed parking spaces to be inadequate to support the marina. Golf carts were proposed by Coscan as a solution to the problem, however, this was not found to be acceptable by the hearing officer, as the piers are too narrow. The lack of certain facilities such as laundry, showers, fuel, and repair facilities do preclude this facility from being characterized as a commercial facility, but on the other hand, the lack of facilities would invite boaters to use some of the residential facilities such as nearby swimming pools and restrooms. Significantly, the developer in this case did no market study to determine whether an expansion of the marina was needed or desired.
All of these incompatible features conflicted with the master plan and were sufficient to deny the change in the use of the area. As there is competent substantial evidence in the extensive record to support the findings of the hearing officer, we therefore, affirm. See Graham v. Estuary Properties, 399 So.2d 1374 (Fla.1981).
Section 380.08(3), Florida Statutes (1987),[1] provides that after specifying the reasons for denying a proposed development, the agency shall indicate any changes in the development proposal that would make it eligible to receive the permit. This court has interpreted that statute to mean that the agency should specify changes, if any, that would make the proposal eligible for a permit. Fox v. Treasure Coast Regional Planning Council, 442 So.2d 221 (Fla. 1st DCA 1983).
In Fox, this court found that while a hearing officer is not obligated to construct a compromise solution, he may not completely abdicate the responsibility of making a statement of any changes that would *84 make a proposal eligible to receive a permit. It is incumbent upon the hearing officer to ensure that sufficient evidence has been entered into the record for competent findings to be made.
An extensive record was presented in this case. There are thousands of pages of transcripts, there were over 40 experts who testified, and over 700 documents presented to the hearing officer. The hearing officer spent a great deal of time analyzing this record, and it is apparent to us that he made all the specific recommendations he could in compliance with section 380.08(3). He stated that the 600 foot piers were too long, the lack of emergency vehicle access violated the fire protection regulations, and that 1.5 parking places per slip should be provided close to the piers. Most importantly, he found that the marina was simply out of scale and incompatible with the surrounding area. No alternative designs or proposals were submitted, and the hearing officer found that it was impossible, on the record presented, to determine whether any additional marina slips could be permitted. The hearing officer also observed that it was “extremely doubtful” that any substantial expansion of the marina, especially one contemplating slips in the north canal or entrance channel, could be compatible with the upland uses. We find these specific findings sufficient to satisfy the responsibilities of the hearing officer under the statute, and to justify the conclusion by FLWAC that there are no changes that would make the proposed development eligible for approval. We do not believe the statute mandates a categorical declaration of the maximum expansion permissible in every case when, as here, there is no indication that development on such a substantially reduced scale as might be possible would be feasible, or reasonably within the contemplation of the applicant. We therefore affirm on that issue.
Finally, we find that because of the policy-making role of FLWAC in resolving a DRI appeal, it should be a party in order to defend its orders and policies. See Fairfield Communities v. Florida Land & Water Adjudicatory Comm’n, 522 So.2d 1012 (Fla. 1st DCA 1988). It is, in fact, the final order of the commission which is being appealed here. The commission has consistently been recognized by this and other appellate courts and the Florida Supreme Court as a party to appeals of this nature. See Young v. State, Dep't of Community Affairs, 567 So.2d 2 (Fla. 3rd DCA 1990); Graham v. Estuary Properties, Inc., 399 So.2d 1374 (Fla.1981).
AFFIRMED.
ERVIN, SMITH and ALLEN, JJ., concur.

. If any governmental agency denies a development permit under this chapter, it shall specify its reasons in writing and indicate any changes in the development proposal that would make it eligible to receive the permit.