604 So.2d 565 (1992)
STATE of Florida, DEPARTMENT OF ENVIRONMENTAL REGULATION, Appellant,
v.
C.G. SCHINDLER, Jr. and L. Brett White, As Trustee, Appellees.
No. 91-02713.
District Court of Appeal of Florida, Second District.
August 28, 1992.
David K. Thulman, Tallahassee, for appellant.
Lee S. Damsker of Maney, Damsker & Arledge, P.A., Tampa, for appellees.
RYDER, Acting Chief Judge.
We have for review a nonfinal order of partial summary judgment as to the liability of the State of Florida, Department of Environmental Regulation (DER) in this taking case. We reverse.
Appellees brought an action against DER and the Board of Trustees of the Internal Improvement Trust Fund (the Board) for the alleged inverse condemnation of a parcel of property located in Indian Rocks Beach, Pinellas County, adjacent to the intracoastal waterway. The property *566 consists of 1.65 acres of uplands and 1.85 acres of wetlands.
Lots 1 through 4 of the subject property were purchased by Edwin Thomas in 1950. Appellees allege in their second amended complaint that from 1943, when the Indian Beach Manor area was platted, until 1960, a portion of the subject property was lost through erosion. Thomas sought a permit from the state to establish a bulkhead and fill the eroded portion of his lots. Title to that portion of the subject property which had eroded and was then submerged, had revested in the state. Appellees further allege that the Board required Thomas to purchase the submerged land from the state as a condition precedent to the issuance of the bulkhead and fill permit. Thomas paid the Board $925.00 and the Board issued a deed conveying him 1.85 acres of submerged land, which abutted his upland lots. The sale was approved at a meeting of the Board on October 18, 1960. Nothing in the minutes of the approval of the sale or in the deed itself grants Thomas a right to fill the submerged 1.85 acres.
Thomas then applied for a permit to fill the submerged portion of lots 1 through 4. On October 12, 1961, the Pinellas County Water and Navigation Authority issued a permit to Thomas to fill the 1.85 acres. By its terms, the permit was subject to approval by the Board. On October 24, 1961, the Board approved the Authority's permit. That permit expired two years after the date of issuance, i.e., October 12, 1963. Thomas never acted on the permit and never filled the submerged 1.85 acres. On April 24, 1964, Thomas purchased Lot 5. Together with his 1.65 acres of uplands, Thomas then owned 3.5 contiguous acres.
On January 18, 1974, George Albrecht and Nellie C. Richey purchased the entire 3.5 acre parcel from Thomas, consisting of 1.65 acres of uplands and 1.85 acres of submerged lands for the purchase price of $75,000.00. On November 21, 1973, prior to his purchase of the property, Albrecht had the entire 3.5 acre parcel appraised. According to that appraisal, the value of the property in its natural, unfilled state was $125,000.00. Its appraised value in the filled state was $230,000.00.
On December 4, 1974, Albrecht and Richey sold appellees, Schindler and White, an undivided one-third interest in the entire 3.5 acres for $60,750.00. On August 25, 1975, Richey sold her remaining undivided one-third interest to appellees for $50,000.00. After those sales, Albrecht, Schindler and White each owned an undivided one-third interest in the property.
On April 6, 1976, Schindler exchanged a parcel of Bahamian property with White for White's remaining interest in the Pinellas property. At that time, Schindler owned an undivided two-thirds and Albrecht owned an undivided one-third interest in the parcel. The approximate value of the exchange was $60,000.00. Approximately six months later, White reacquired a one-third interest through an unrecorded deed. On September 24, 1981, Albrecht sold his remaining one-third undivided interest to White. As of 1986, White, Schindler and White, as trustee, each possessed undivided one-third interests in the property.
Shortly after purchasing the property in 1974, Richey and Albrecht applied to DER for a permit to fill the 1.85 acres. That permit application was denied by DER and the denial was upheld by the Board on November 10, 1976. Albrecht and Richey appealed the denial to the First District Court of Appeal, which upheld the permit denial on December 27, 1977. Albrecht v. Department of Environmental Regulation, 353 So.2d 883 (Fla. 1st DCA 1977), cert. denied, 359 So.2d 1210 (Fla. 1978). This present action was commenced after the permit denial was upheld on appeal.
The parcel consists of Lots 1 through 5 of Indian Beach Manor, Indian Rocks Beach. The upland portion of the property is 243 feet along a major road, (Gulf Boulevard) by 118 feet deep. The property is zoned for commercial and residential use, including condominiums, apartments and motels.
After purchase of the property, neither Albrecht nor Schindler ever attempted to make commercial use of the uplands of the *567 property. According to their testimony, it was always Albrecht's and Schindler's intent to fill the entire submerged portion of the property and use it as a whole. At the time of the purchase by Albrecht and Richey in 1974, through at least July 1979 the property has had two income-producing rental houses. Michael Kenton, an environmental management consultant, testified by deposition that the submerged property could be used to compliment the use of the uplands by installing a boardwalk, walkway, gazebo, fishing pier and perhaps boating slips.
Appellees moved for partial summary judgement on the issue of liability against DER and the Board. In the motion for partial summary judgment, appellees claim that as a result of DER's denial of their application to bulkhead and fill the submerged portion of the subject property, that the 1.85 acres of submerged property has no economically reasonable use. The trial court granted appellees motion for partial summary judgment, without making any findings of fact.
Appellees contend that the state has taken, by inverse condemnation, the 1.85 acres of submerged land, without compensation. Appellees claim that the 1.85 acres of submerged land is separate and distinct from the 1.65 acres of uplands, and should be considered separately when determining whether a taking has occurred. DER, on the other hand, contends that the 1.85 acres of submerged land is but a portion of the entire 3.5 acres owned by appellees, and therefore, the entire 3.5 acres should be considered in determining whether a taking has occurred.
DER correctly states that the seminal issue in this case is what "property" the court should consider in deciding whether there has been a taking, i.e., the 1.85 acres of submerged land or the entire 3.5 acres.
Appellees argue that the 1.85 acres should be considered separately because there is a lack of "unity of use" of both the 1.65 acres of uplands and the 1.85 acres of wetlands. See Division of Administration, Department of Transportation v. Jirik, 471 So.2d 549 (Fla. 3d DCA 1985), approved, 498 So.2d 1253 (Fla. 1986). Appellees, however, have not attempted any "unity of use," but merely make the self-serving statement that "the 1.85 acres of submerged land has no commercial use and can have no `unity of use' with the portion of land which abuts Gulf Boulevard and which can be used for commercial uses." Appellees offered no independent evidence to support this contention. See Graham v. Estuary Properties, Inc., 399 So.2d 1374 (Fla. 1981), cert. denied, Taylor v. Graham, 454 U.S. 1083, 102 S.Ct. 640, 70 L.Ed.2d 618 (1981). This self-serving statement also ignores Mr. Kenton's testimony that the submerged property could be used to complement the use of the uplands by installing a boardwalk, walkway, gazebo, fishing pier and perhaps boating slips.
Appellees also rely on Jirik for the presumption that platted lots are separate units for inverse condemnation purposes. However, the facts in Jirik are distinguishable from the facts in the case sub judice. The submerged land which appellees argue is separate from the uplands is not platted as a separate piece of property as were the lots in Jirik. "[W]here it is established that the parcels are physically contiguous, a presumption arises that the parcels are one unit. However, this presumption can be rebutted by evidence that the parcels are otherwise `separate.'" Jirik, 471 So.2d at 553.
Appellees have not rebutted the presumption that physically contiguous parcels are one unit, except by stating that the submerged land is separate for purposes of this action merely because the land is submerged. In all other respects, appellees and their predecessors in title have treated the 3.5 acres as one unit of property. Every deed conveys undivided interests in the whole 3.5 acres. The property was never considered divided, but instead, always undivided. The submerged property seemingly has always been considered an integral part in the use and development of the whole property. In addition, appellees' second amended complaint alleges a taking of the entire 3.5 acres.
*568 The facts in this case are more akin to the facts in State of Florida, Department of Environmental Regulation v. MacKay, 544 So.2d 1065 (Fla. 3d DCA 1989). The MacKays owned 3.2 acres, 2.5 of which were completely submerged. DER denied the MacKays' permit application to fill the submerged portion of their land. In reversing the trial court's finding that DER's ruling precluded all economically reasonable use of the property, and thus, constituted a taking, the third district held that the MacKays failed to show that a taking occurred. "A taking will not be established merely because the agency denies a permit for the particular use that a property owner considers to be the most desirable, or because the agency totally denies use of some portion of the property." MacKay, 544 So.2d at 1066 (quoting Fox v. Treasure Coast Regional Planning Council, 442 So.2d 221, 226 (Fla. 1st DCA 1983)). "[T]he focus is on the nature and extent of the interference with the landowner's rights in the parcel as a whole in determining whether a taking of private property has occurred. Prohibition of development on certain portions of the tract does not in itself effect an unconstitutional taking." Fox, 442 So.2d at 225 (emphasis original) (footnote omitted).
Because the trial court made no findings of fact in its order of partial summary judgment, we are unable to discern what "property" the trial court took into consideration in granting appellees' motion. However, because appellees' motion for partial summary judgment referred to the 1.85 acres of submerged land only, we assume that the trial court, in granting the motion, took into consideration only the 1.85 acres. Because the 1.85 acres of submerged land is but a portion of the 3.5 acres, we hold that the entire 3.5 acres should be considered as a whole in determining whether a taking has occurred.
When the entire 3.5 acres is considered, the trial court should look to Estuary Properties and consider the factors set forth therein. Like the property in Estuary Properties, the property here is not entirely submerged and appellees did not purchase the property from the state, but from a private individual "with full knowledge that part of it was totally unsuitable for development." Estuary Properties at 1382. "The owner of private property is not entitled to the highest and best use of his property if that use will create a public harm." Id.
Appellees rely on the cases of Zabel v. Pinellas County Water & Navigation Control Authority, 171 So.2d 376 (Fla. 1965) and Askew v. Taylor, 299 So.2d 72 (Fla. 1st DCA 1974) for the proposition that appellees have a contractual right to fill the submerged land in question. Appellees argue that because Thomas was granted a permit to fill the submerged land in 1961, appellees succeeded to Thomas' right to fill the land. However, Thomas let the permit expire in 1963 without filling the land.
Appellees argue that because the Board of Trustees required Thomas to purchase the submerged land "as a condition precedent" to filling the land, the right to fill is contractual and travels with the land. Appellees further argue that the only reason Thomas bought the submerged land was to bulkhead and fill the land. If this is true, then Thomas would not have let two years elapse and allow the permit to expire without filling the land. Appellees appear to be speculating as to what was in Thomas' mind and the trustees' minds in 1960, when the purchasing and permitting occurred.
It is clear that questions of fact remain as to whether, when considering the 3.5 acres as a whole, a taking has occurred. The entry of partial summary judgment as to liability on this issue was error. The remaining issues raised by DER are either rendered moot by our disposition above, or go to the question of whether a taking of the entire 3.5 acres has occurred. Accordingly, those issues should be addressed at trial.
Reversed and remanded for further proceedings consistent with this opinion.
DANAHY and BLUE, JJ., concur.